Autrey Edward CATES, Sr., Edward Cates, Jr., & Leroy Ward, Appellants,

v.

CINCINNATI LIFE INSURANCE COMPANY, Northwestern Mutual Life Insurance Company, Mid–Continent Life Insurance Company, Central Life Assurance Company, Phoenix Mutual Life Insurance Company and Jackson National Life Insurance Company, Appellees.

No. 06–94–00129–CV.

Court of Appeals of Texas, Texarkana.

May 16, 1997.

W. David Carter, Texarkana, for Appellants.

Ralph K. Burgess, Texarkana, for Appellee Mid–Continent.

Jennifer Haltom Doan, Texarkana, Andrew G. Jubinsky, Dallas, for Appellees Northwestern, Central and Phoenix.

Arthur M. Meyer, Jr., Dallas, for Appellee Jackson National.

Michael F. Jones, Texarkana, for Appellee Cincinnati Life.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

GRANT, Justice.

On November 12, 1992, Autrey Cates, Sr., Edward Cates, Jr., and Leroy Ward (the Cateses) filed suit against defendants Central Life Assurance Company, Phoenix Mutual Life Insurance Company, Mid–Continent Life Insurance Company, Cincinnati Life Insurance Company, Northwestern Mutual Insurance Company, and Jackson National Life Insurance Company of Texas. The petition alleged violations of the Deceptive Trade Practices Act and Texas Insurance Code, negligence, and breach of the duty of good faith and fair dealing. The trial court granted the insurance companies' motions for summary judgment and entered a take-nothing judgment. The Cateses appealed. This Court reversed and remanded for a new trial.[1] Northwestern, Central, Phoenix, and Mid–Continent appealed to the Supreme Court. The Texas Supreme Court remanded to this Court to consider the insurance companies' cross-points, each asserting that we

---

1. *Cates v. Cincinnati Life Ins. Co.*, 909 S.W.2d 186 (Tex.App.-Texarkana 1995).

should affirm the summary judgment.[2] The cross-points were based on grounds for summary judgment that the trial court specifically denied. Subsequent to the remand to this Court, Northwestern settled its claims. We will address the cross-points of the remaining three appellees, Central, Phoenix, and Mid–Continent. The Supreme Court also instructed the court of appeals to again review Mid–Continent's summary judgment evidence separate and apart from the evidence of the other insurance companies.

A party moving for summary judgment has the burden of establishing both the absence of a genuine issue of material fact and the movant's entitlement to judgment as a matter of law.[3] A defendant movant can prevail by establishing conclusively against the plaintiff one factual element of each theory the plaintiff pleaded.[4] In deciding whether there is a disputed issue of material fact precluding summary judgment, an appellate court views all evidence in the light most favorable to the nonmovant and resolves all doubts in the nonmovant's favor.[5] An appellate court will not consider evidence that favors the movant's position unless it is uncontroverted.[6] If any theory advanced in a motion for summary judgment supports the granting of summary judgment, a court of appeals may affirm, regardless of whether the trial court specified the grounds on which it relied.[7]

Central's and Phoenix's first cross-point is that the statute of limitations barred the suit. A two-year statute of limitations applies.[8] Central and Phoenix incorrectly contend that because the Cateses neither pleaded nor submitted summary judgment proof that the discovery rule applied, they waived any argument that the rule should apply. A defendant seeking summary judgment must (1) prove when the cause of action accrued and (2) negate the discovery rule by proving as a matter of law that there is no genuine issue of fact about when the plaintiff discovered or should have discovered the nature of the injury.[9]

Under the discovery rule, the statute of limitations commences when the injured party discovers or should have discovered, in the exercise of reasonable care and diligence, the nature of the party's injury.[10] "[T]he discovery rule imposes a duty on the plaintiff to exercise reasonable diligence to discover facts of negligence or omission."[11] Knowledge of facts that would lead a reasonable person to undertake further inquiry suffices to begin the running of the statute of limitations.[12]

2. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623 (Tex.1996).

3. Tex.R.Civ.P. 166a(c); *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 23 (Tex.1990).

4. *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex. 1972).

5. *Nixon v. Mr. Property Management*, 690 S.W.2d 546 (Tex.1985).

6. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965).

7. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623 (Tex.1996).

8. *See*, Tex.Bus & Com.Code Ann. § 17.565 (Vernon 1987); *Clade v. Larsen*, 838 S.W.2d 277, 281 (Tex.App.-Dallas 1992, writ denied) (DTPA); Tex. Ins.Code Ann. art. 21.21 § 16(d) (Vernon Supp. 1997); *Zidell v. Bird*, 692 S.W.2d 550, 553 (Tex. App.-Austin 1985, no writ), and *Clade*, 838 S.W.2d at 281 (Insurance Code); Tex.Civ. Prac. &

Rem..Code Ann § 16.003 (Vernon 1986 & Supp. 1997) (negligence); *Arnold v. National County Mutual Fire Ins. Co.*, 725 S.W.2d 165, 168 (Tex. 1987) (good faith and fair dealing).

9. *Burns v. Thomas*, 786 S.W.2d 266 (Tex.1990).

10. *See, e.g., Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex.1988). The statute of limitations for DTPA actions actually incorporates the discovery rule; the statute of limitations does not commence until the consumer either "discovered or in the exercise of reasonable diligence, should have discovered" the unlawful act or breach. Tex.. Bus. & Com.Code Ann. § 17.565; *Navarette v. Temple Independent School Dist.*, 706 S.W.2d 308 (Tex.1986).

11. *Bayou Bend Towers v. Manhattan Constr.*, 866 S.W.2d 740, 742–43 (Tex.App.-Houston [14th Dist.] 1993, writ denied).

12. *See First Nat'l Bank of Boston v. Champlin Petroleum*, 709 S.W.2d 4 (Tex.App.-Corpus Christi 1986, writ ref'd n.r.e.).

■ To support their statute of limitations ground, Central and Phoenix offered summary judgment proof of the following:

(1) the Northwestern policy lapsed May 15, 1987;[13]

(2) the Central policy lapsed November 1, 1987;

(3) Edward Cates, Jr. received a lapse notice from Central on January 7, 1988;

(4) the Phoenix policy lapsed January 12, 1988; and

(5) Edward Cates, Jr. received a lapse notice from Phoenix, dated March 4, 1988.

In response, the Cateses offered summary judgment proof that Edward Cates, Jr. did not realize that he "had been scammed" until 1989 or 1990.[14]

■ In a summary judgment proceeding, a party's testimonial declarations contrary to the party's position are quasi-admissions.[15] "They are merely some evidence" and are not conclusive against the party. Courts distinguish between a quasi-admission and a true judicial admission "which is a formal waiver of proof" usually found in pleadings or the parties' stipulations of the parties.[16] A judicial admission is conclusive against the party making it, "relieves the opposing party's burden of proving the admitted fact, and bars the admitting party from disputing it."[17] Courts will treat a party's testimonial quasi-admission as a conclusive judicial admission only if the statement is deliberate, clear, and unequivocal and the party asserting that the statement is an admission eliminates the "hypothesis of mere mistake or slip of the tongue" must be eliminated.[18]

The suit was filed on November 12, 1992. If the jury determined that the Cateses did not discover or should not have discovered the nature of their injury until after November 12, 1990, then the discovery rule would not be applicable. Without a specific date, we cannot find this proof is conclusive against the Cateses.

Central and Phoenix contend that after receiving lapse notices, a reasonable person would inquire about the policies, and that therefore, the statute of limitations commenced when Edward Cates, Jr. received the lapse notices. The Cateses offered summary judgment proof that after receiving the notices, Edward Cates, Jr. informed Gale Butler, the insurance companies' alleged agent, from whom the policies were purchased. The Cateses' summary judgment proof shows that Edward Cates, Jr. then gave Butler cash and relied on him to take care of keeping the policies in force. If Butler is found to have been an apparent agent for the insurance companies and Cates is found to have paid Butler the cash to continue the policies in force, then the lapse notices alone would not be evidence as a matter of law that the statute of limitations had commenced. This raises a disputed fact issue in the case.

Viewing all evidence in the light most favorable to the nonmovants, the Cateses, and resolving all doubts in their favor, we determine that a material fact issue existed about whether Edward Cates, Jr. reasonably should have known of the nature of his injury before November 12, 1990. Consequently, Central and Phoenix failed to conclusively establish that as a matter of law there was no genuine issue of material fact about when the plaintiff discovered or should have discovered

---

13. Northwestern is no longer a party to the suit.

14. The following is an excerpt from Edward Cates, Jr.'s deposition:

> Q Would it be a fair statement, then, you had no conversations with Gale Butler after 1989?
> A I am not sure if it was '90 or '89. I don't remember.
> Q Well, what is the latest year you think you had any conversations with Gale Butler?
> A The latest? Probably late '89 or '90. I don't know.
> ....

> Q The last time you ever talked to Gale Butler was sometime in 1989?
> A Approximately, yes, sir.

15. *Hennigan v. I.P. Petroleum Co.*, 858 S.W.2d 371, 372 (Tex.1993) (quoting *Mendoza v. Fidelity & Guar. Ins. Underwriters*, 606 S.W.2d 692, 694 (Tex.1980)).

16. *Id.* (quoting *Mendoza*, 606 S.W.2d at 694).

17. *Id.* (quoting *Mendoza*, 606 S.W.2d at 694).

18. *Id.*

the nature of the injury. The statute of limitations ground, therefore, does not support Central's and Phoenix's summary judgment. These cross-points are overruled.

 The Supreme Court has directed this Court to review Mid–Continent's contentions separately on its summary judgment proof to negate essential elements of each of the appellants' claims by conclusively establishing the following:

(1) Because Mid–Continent terminated Butler prior to his contact with the appellants, he had no actual, apparent, or implied authority on behalf of Mid–Continent to make any contract with or representations to the Cateses; and

(2) Mid–Continent owed no legal duty to the appellants.

These contentions are also raised in Mid–Continent's first cross-point.

 "[A]ny time before full performance" a principal may revoke its agent's authority.[19] This revocation results in the agent's loss of authority to bring the principal into legal relations with a third party.[20] Mid–Continent produced competent summary judgment proof that it terminated Butler's agency before Butler allegedly contracted with Edward Cates, Jr. to provide a Mid–Continent life insurance policy and before any contract between Butler and Cates. The Cateses produced no summary judgment proof to controvert this termination. Mid–Continent conclusively established that it terminated Butler's agency prior to Butler's contracting with Edward Cates, Jr. Mid–Continent contends that because it terminated Butler's agency before Butler allegedly issued Edward Cates, Jr. an insurance policy covering Ward's life, Butler was not Mid–Continent's agent when he allegedly issued the policy.

 As to third parties, agency may arise by estoppel.[21] Agency by estoppel arises from acts and appearances leading third persons to believe that an agency relationship has been created.[22] Apparent authority is created as to a third person by a principal's conduct which, reasonably interpreted, causes the third person to believe that a principal consents to the act done on its behalf by one purporting to act for the principal.[23] If a principal seeks to terminate a general agency, the principal sometimes is estopped, even after revocation of the agent's authority, to say that the agent's act was not authorized.[24]

The Cateses contend that Butler's presentation, preparation, and signing of an application provided by Mid–Continent is some proof of apparent authority, citing *Paramount Nat'l Life Ins. Co. v. Williams*, 772 S.W.2d 255 (Tex.App.-Houston [14th Dist.] 1989, writ denied), and *Tidelands Life Ins. Co. v. Franco*, 711 S.W.2d 728 (Tex.App.-Corpus Christi 1986, writ ref'd n.r.e.). Each of these cases involved forms the insurer provided to its agent, and the issue was the *scope of the agent's authority*.

 In the present case, Mid–Continent admitted that Butler had been its agent previously, and the Cateses were provided Mid–Continent's application form. This evidence would suggest that Mid–Continent had left its application forms with Butler, thus presenting some evidence that Mid–Continent may have allowed Butler to continue to be clothed in authority as apparent agency. Viewed in the light most favorable to the Cateses, the summary judgment proof raises some evidence of a genuine issue of material

**19.** *Sunshine v. Manos*, 496 S.W.2d 195, 198 (Tex. Civ.App.-Tyler 1973, writ ref'd n.r.e.); *McDonald v. Davis*, 389 S.W.2d 494, 497 (Tex.Civ.App.-Houston 1965, no writ).

**20.** *Sunshine*, 496 S.W.2d at 198; *Chain v. Pye*, 429 S.W.2d 630, 634 (Tex.Civ.App.-Beaumont 1968, writ ref'd n.r.e.); *McDonald*, 389 S.W.2d at 497.

**21.** *Ames v. Great Southern Bank*, 672 S.W.2d 447, 450 (Tex.1984).

**22.** *Id.*

**23.** *Mexico's Indus. v. Banco Mexico Somex*, 858 S.W.2d 577, 583 n. 11 (Tex.App.-El Paso 1993, writ denied).

**24.** *Scott v. Law Union & Rock Ins. Co.*, 12 S.W.2d 147 (Tex. Comm'n App.1929).

fact about whether Mid–Continent acted in such a way as to give rise to agency by estoppel or apparent agency.[25]

■ Mid–Continent also contends that it owed the Cateses no legal duty. Mid–Continent contends that, because its uncontroverted summary judgment proof conclusively established that Mid–Continent neither received any applications from nor issued any policies to the Cateses, it is not liable for handling or processing applications and premiums. The summary judgment proof raised a material fact issue concerning whether Butler was an agent by estoppel or apparent authority; therefore, Mid–Continent failed to conclusively establish that it owed the Cateses no duty. Mid–Continent's points of error are overruled.

■ In Central's, Phoenix's, and Mid–Continent's second cross-point, they contend that the trial court erred in denying summary judgment on the ground that Edward Cates, Sr. and Ward suffered no damages as a matter of law. If Edward Cates, Jr. prevails in the other aspects of his cause of action, he has a legal theory of recovery of the more than $6,000 in total premiums that he paid on nonexisting insurance policies, amounts varying as to each company. Edward Cates, Sr. was the beneficiary under the policy; however, as a matter of law he would not be entitled to recover damages from the insurance unless he had a vested interest under the policy. Texas law provides that a beneficiary's interest under a life insurance policy vests when any of the following three conditions is met: (1) there is a contract providing that there will not be a change in the designation of the beneficiary *(see Prudential Ins. Co. v. Burke,* 614 S.W.2d 847 (Tex.Civ.App.-Texarkana1981), *writ ref'd n.r.e.* 621 S.W.2d 596 (Tex.1981)); (2) the life insurance policy itself reserved no right for the owner of the policy to change the beneficiary *(see McNeill v. Chinn,* 45 Tex.Civ.App. 551, 101 S.W. 465 (1907)); (3) the insured

dies. Not one of these factors existed in the present case. Therefore, Edward Cates, Sr. did not have a vested right for damages as a beneficiary under the policy. Cates has claimed loss of his future rights to policy proceeds, but until these proceeds vest, these property rights are speculative and do not show damages.

■ It is contended that Ward, the insured, was damaged because, although he was insurable at the time Edward Cates, Jr. contracted for the policies, his health has degenerated to the point that he is no longer insurable. The preserving of insurability by having a policy in effect can be a valuable right, the loss of which could result in damages. In the present case, however, Ward stated in his deposition that he did not know who the beneficiary of the policies was, that he did not know the amount of the policies, that he did not pay the premiums on the policies, that Edward Cates, Jr. had not offered to purchase life insurance for him, that he did not know why he was a party to the lawsuit, and that he was seeking to recover from the insurance companies in the lawsuit. Unless Ward wanted insurance policies on his life and wanted to maintain the ability to have his life insured, then he has suffered no damage from the loss of insurability on life insurance policies providing for proceeds to go to a beneficiary unknown to him. The record contains no indication that he now wants to have life insurance policies in effect on his life or that he ever did-either purchased by him or by some other person. Therefore, as a matter of law, there was no damage to Ward.

The Cateses contend that because the cross-point on no damages involved only Edward Cates, Sr. and Ward, there could only be a partial summary judgment because it does not dispose of Edward Cates, Jr.'s claims, and thus is not appealable. If the trial court had granted the motion for sum-

---

25. Agency by estoppel is an affirmative defense. *Garza v. Williams Bros. Contsr. Co.,* 879 S.W.2d 290, 295 (Tex.App.-Houston [14th Dist.] 1994, no writ); Tex.R.Civ.P. 94. It must be specifically pled under *Texas Rule* of Civil Procedure 94. *Nicholson v. Memorial Hosp. Sys.,* 722 S.W.2d 746, 749 (Tex.App.-Houston [14th Dist.] 1986,

writ ref'd n.r.e.). The record shows that the Cateses did not specifically plead the affirmative defense of agency by estoppel or apparent agency. When summary judgment proof raises a genuine issue of material fact on each element of the defense, however, summary judgment is improper. *Id.*

mary judgment on the ground asserted in this cross-point only, the result would have been a partial summary judgment. This would have been interlocutory in nature. But a full summary judgment was granted and was appealable. Because we have determined that Edward Cates, Sr. and Ward had no damages as a matter of law, we sever their causes of action from that of Edward Cates, Jr. pursuant to TEX.R.APP. P. 80(c) and affirm the summary judgment as to these two parties.

We sustain Central's, Phoenix's, and Mid-Continent's cross-points contending that Edward Cates, Sr. and Ward suffered no damages, sever their causes of action, and affirm the summary judgment against them. We reverse Central's, Phoenix's, and Mid-Continent's summary judgments against Edward Cates, Jr. and remand the case to the trial court for a new trial.