

## NUMBER 13-09-00177-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

JOSEPH ANTHONY RIVAS,                                    Appellant,

v.

MPII, INC. D/B/A MISSION PARK
FUNERAL CHAPELS SOUTH,                                   Appellee.

On appeal from the 57th District Court
of Bexar County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Perkes
Memorandum Opinion by Justice Rodriguez**

This is an appeal from a final summary judgment granted in favor of appellee MPII,

Inc. d/b/a Mission Park Funeral Chapels South (Mission Park) and against appellant

Joseph Anthony Rivas. The sole issue is whether the trial court erred in granting Mission

Park's motion for summary judgment. We reverse and remand.

## I. BACKGROUND[1]

It is undisputed that this is a premises liability case. The suit arose when Rivas, while acting as a pallbearer at a burial service on Mission Park's premises, fell into a hole at the grave site. Rivas filed suit, and Mission Park subsequently filed motions for traditional and no-evidence summary judgment. *See* TEX. R. CIV. P. 166a(c), (i). The basis for its traditional motion was that Mission Park negated, as a matter of law, the first element of Rivas's cause of action—that Mission Park had knowledge of the complained-of condition on its premises. The basis for its no-evidence motion was that Rivas had no evidence that Mission Park had knowledge of an unreasonably dangerous condition. After hearing argument on the motions, the trial court granted Mission Park summary judgment without stating the grounds. This appeal followed.[2]

## II. STANDARD OF REVIEW

The standard of review for the granting of a motion for summary judgment is determined by whether the motion was brought on no-evidence or traditional grounds. *See* TEX. R. CIV. P. 166a(c), (i); *see also Ortega v. City Nat'l Bank*, 97 S.W.3d 765, 771 (Tex. App.–Corpus Christi 2003, no pet.) (op. on reh'g). A no-evidence summary judgment is equivalent to a pretrial directed verdict, and this Court applies the same legal sufficiency standard on review. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *Ortega*, 97 S.W.3d at 772; *Moore v. K-Mart Corp.*, 981 S.W.2d 266, 269 (Tex.

---

[1] All issues of law presented by this case are well settled, and the parties are familiar with the facts. Therefore, we will not recite the law or the facts in this memorandum opinion, except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

[2] The case is before this Court on transfer from the Fourth Court of Appeals in San Antonio pursuant to an order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005).

2

App.–San Antonio 1998, writ denied). Such a summary judgment motion should be granted if there is no evidence of at least one essential element of the plaintiff's claim. *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam). The burden of producing evidence is entirely on the non-movant; the movant has no burden to attach any evidence to the motion, and if the non-movant produces evidence to raise a genuine issue of material fact, summary judgment is improper. TEX. R. CIV. P. 166a(i).

All that is required of the non-movant is to produce a scintilla of probative evidence to raise a genuine issue of material fact on the challenged element. *Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex. 2003); *Ortega*, 97 S.W.3d at 772. "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion of a fact.'" *Ortega*, 97 S.W.3d at 772 (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)); *see Forbes*, 124 S.W.3d at 172. Conversely, more than a scintilla of evidence exists when reasonable and fair-minded individuals could differ in their conclusions. *Forbes*, 124 S.W.3d at 172; *Ortega*, 97 S.W.3d at 772 (citing *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994)). In determining whether the non-movant has produced more than a scintilla of evidence, we review the evidence in the light most favorable to the non-movant, crediting such evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Tamez*, 206 S.W.3d at 582; *City of Keller v. Wilson*, 168 S.W.3d 802, 825, 827 (Tex. 2005) (noting that review of a "no-evidence" motion for summary judgment is effectively restricted to the evidence contrary to the motion); *Ortega*, 97 S.W.3d at 772.

We review the trial court's granting of a traditional motion for summary judgment

3

de novo. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *Branton v. Wood*, 100 S.W.3d 645, 646 (Tex. App.–Corpus Christi 2003, no pet.). When reviewing a traditional summary judgment, we must determine whether the movant met his burden to establish that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). The movant bears the burden of proof in a traditional motion for summary judgment, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *See Sw. Elec. Power Co.*, 73 S.W.3d at 215. We take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

We will affirm a traditional summary judgment only if the record establishes that the movant conclusively proved its defense as a matter of law or if the movant negated at least one essential element of the plaintiff's cause of action. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004); *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997); *Clear Creek Basin Auth.*, 589 S.W.2d at 678. A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *City of Keller*, 168 S.W.3d at 816.

When, as in the present case, an order granting summary judgment does not state the specific grounds on which summary judgment was granted, a court will uphold it on any ground presented in the motion. *Cincinnati Life Ins. Co. v. Cates*, 947 S.W.2d 608, 610 (Tex. 1997). Moreover, when a party moves for summary judgment under both rules

4

166a(c) and 166a(i) of the Texas Rules of Civil Procedure, we will first review the trial court's judgment under the standards of rule 166a(i). *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If the appellant fails to produce more than a scintilla of evidence under that burden, then there is no need to analyze whether appellee's summary judgment proof satisfies the rule 166a(c) burden. *Id.*

### III. APPLICABLE LAW

In order to establish a premises liability claim, a plaintiff must prove the following four elements: (1) the owner or occupier had actual or constructive knowledge of a condition on the premises; (2) the condition posed an unreasonable risk of harm; (3) the owner or occupier did not exercise reasonable care to reduce or eliminate the risk; and (4) the owner or occupier's failure to use such care proximately caused the plaintiff's injury. *Wal-Mart Stores v. Reece*, 81 S.W.3d at 812, 814 (Tex. 2002); *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99 (Tex. 2000). The challenged element in this case is the first element— knowledge.

Rivas does not dispute that there is no evidence that Mission Park had actual knowledge, i.e., that Mission Park created or knew of the condition on the premises. Instead, Rivas relies on constructive knowledge, which requires proof that Mission Park had a reasonable opportunity to discover the defect. *Reece*, 81 S.W.3d at 813; *CMH Homes, Inc.*, 15 S.W.3d at 101-02 ("Daenen would be entitled to recover if he presented evidence that CMH actually knew that the platform and step unit had become unstable or if a reasonable inspection would have revealed that the unit was no longer safe."); *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex. 1983) ("The occupier is considered to have constructive knowledge of any premises defects or other dangerous conditions that

5

a reasonably careful inspection would reveal.").

As the supreme court explained in *Wal-Mart Stores, Inc. v. Spates*, the question of constructive knowledge "requires analyzing the combination of proximity, conspicuity, and longevity." 186 S.W.3d 566, 567-68 (Tex. 2006) (per curiam) (citing *Reese*, 81 S.W.3d at 816). "If the dangerous condition is conspicuous as, for example, a large puddle of dark liquid on a light floor would likely be, then an employee's proximity to the condition might shorten the time in which a jury could find that the premises owner should reasonably have discovered it." *Id.* "Similarly, if an employee was in close proximity to a less conspicuous hazard for a continuous and significant period of time, that too could affect the jury's consideration of whether the premises owner should have become aware of the dangerous condition." *Id.* In addition, "[w]ithout some temporal evidence, there is no basis upon which the fact[-]finder can reasonably assess the opportunity the premises owner had to discover the dangerous condition." *Reese*, 81 S.W.3d at 816. Moreover, "when circumstantial evidence is relied upon to prove constructive notice[, as in this case,] the evidence must establish that it is more likely than not that the dangerous condition existed long enough to give the proprietor a reasonable opportunity to discover the condition." *Wal-mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 936, 936 (Tex. 1998). "[M]eager circumstantial evidence from which equally plausible but opposite inferences may be drawn is speculative and thus legally insufficient to support a finding." *Id.*

## IV. DISCUSSION

### A. NO-EVIDENCE SUMMARY JUDGMENT MOTION

By his sole issue on appeal, Rivas asserts, in response to the no-evidence summary judgment, that he produced more than a scintilla of probative evidence to raise

a genuine issue of material fact regarding Mission Park's constructive knowledge of the hole into which he fell. *See Forbes*, 124 S.W.3d at 172; *Ortega*, 97 S.W.3d at 772. He argues that reasonable minds could conclude that a reasonably careful inspection would have revealed the hole, and because the hole was left in such an area, reasonable minds could further conclude Mission Park failed to conduct a reasonably careful inspection of the premises in question. Rivas bases his argument on evidence which he contends establishes the following: (1) the size and location of the hole should have led to its discovery; (2) Mission Park employees should have discovered the hole during the construction of the grave; or (3) Mission Park employees should have discovered the hole while laying Astroturf over the grave site. *See Keetch v. The Kroger Co.*, 845 S.W.2d 262, 264-66 (Tex. 1992) (explaining that the fact that the premises owner creates a condition may support an inference of knowledge, but alone is insufficient to prove knowledge as a matter of law; an inference of knowledge cannot be made as a matter of law unless knowledge is uncontroverted; and given such an inference, it is up to the fact-finder to determine whether the owner or occupier knew or should have known of the condition). In response, Mission Park contends that these assertions are logical only if the hole existed for a significant period prior to the burial service and that Rivas offered no evidence to show that this was the case. Therefore, Mission Park asserts that Rivas has offered less than a scintilla of evidence to establish constructive knowledge, and the trial court properly granted its no-evidence motion for summary judgment.

In support of his argument, Rivas refers this Court to excerpts of his deposition testimony and the deposition testimony of Andy Campa, Mission Park's employee of twenty-four years and its foreman at the time of the incident, which were attached to or

7

incorporated into Rivas's response to Mission Park's motion for summary judgment. Specifically, Rivas testified at his deposition that he "stepped on the carpet and went straight down and it wasn't into the grave. It was down—the carpet was covering the hole that I went into." Rivas explained that he took one step onto the Astroturf surrounding the frame and his left foot "went down." As illustrated by a diagram drawn by Rivas and attached as a deposition exhibit, the hole was located alongside the grave. Rivas described the size of the hole as big "[e]nough for [his] whole leg and hip to go into it" and testified that his leg went down, "all the way to [his] hip," right beneath his waistline. When asked whether the hole was separate from or part of the actual grave, Rivas testified, "I couldn't say. The carpet was covering everything."

Campa testified that his responsibilities included "making sure everything gets done, take care of my guys, tell them what to do, what not to do, dig my graves." He also gave a detailed explanation of Mission Park's procedures for digging graves, which included going to the proposed grave location, laying measuring tape, marking the grave with pins, and digging the grave with a backhoe. Campa explained that he dug the graves one day or two days ahead of time, and after a grave is dug, he "clean[s] the area out, make[s] sure there's no limbs, nothing—nothing's wrong around there for when the service gets there." His final step is to "lay out boards, and then … put plywood over the grave." Chapa also provided the following answers at his deposition:

Q.      Okay. And do you typically have some carpet that you lay down or something like that?

A.      Well, yeah, when we get ready to have the service.

Q.      Uh-huh. So that would be something you normally do?

8

A.     We do it in all our services.

This summary judgment evidence shows that a hole, large enough for Rivas's "leg and hip to go into," existed alongside the grave and Rivas fell into it while providing his services as a pallbearer; that a grave is dug one or two days in advance of the service and the area is cleaned out to make "sure there's no limbs, nothing—nothing's wrong around for when the service gets there"; that sometime after the grave is dug and before the service, carpet is put into place as part of the burial service preparations; and that the hole, in this case, was covered by Astroturf when Rivas fell into it.

To conclude Mission Park had constructive knowledge of the hole, jurors would have to conclude that the employees should have noticed the hole, in other words, that Mission Park had a reasonable opportunity to discover the defect.   Reviewing the evidence in the light most favorable to Rivas, crediting such evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not, *see Tamez*, 206 S.W.3d at 582; *City of Keller*, 168 S.W.3d at 825, 827; *Ortega*, 97 S.W.3d at 772, this summary judgment evidence indicates that Mission Park employees were at the grave site in question, preparing the grave a day or two before the service, and covering the grave site with Astroturf after the grave was opened but prior to the service.

As set out earlier, the question of constructive knowledge "requires analyzing the combination of proximity, conspicuity, and longevity."   *Spates*, 186 S.W.3d at 567-68 (citing *Reese*, 81 S.W.3d at 816).   In this case, a jury could reasonably find that Mission Park's employees' proximity to the condition during the preparation of the grave and set up of the site for the burial service within one day or, at most, two days of the burial service support a conclusion that Mission Park should reasonably have discovered the

9

large hole into which Rivas fell. *See id.* Moreover, based on circumstantial evidence that the hole, concealed by Astroturf and located right beside the grave, was big enough for Rivas's whole leg and hip to go into, a jury could reasonably infer that it is more likely than not that the dangerous condition existed long enough to give Mission Park a reasonable opportunity to discover the condition. *See Gonzalez*, 968 S.W.2d at 936. This evidence is more than meager circumstantial evidence.[3] *See id.* We cannot

---

[3] The dissent correctly notes that we have not considered evidence regarding the possible occurrence of a cave-in. We need not do so because the favorable evidence is more than meager circumstantial evidence. *See City of Keller*, 168 S.W.3d 802, 814 (Tex. 2005) (noting that, under the no-evidence standard of review, "when the circumstantial evidence of a vital fact is meager, a reviewing court must consider not just favorable but all the circumstantial evidence, and competing inferences as well"). Furthermore, even were we to have concluded that the circumstantial evidence was meager, we would still not agree with the conclusion reached by the dissent, that the following deposition testimony is consistent with an equally plausible but opposite inference that the hole resulted from a cave-in and came into existence the moment Rivas stepped on the Astroturf:

Q:          And are you certain that it was a hole that you fell into?

A. [Rivas]   What could it have been?   I have no idea.

Q.          I'm asking you, sir.

A.          Oh, you're asking me.   I fell into a hole.   I have no idea what it was.

Q.          And do you have any facts which suggest that Mission Park knew of the existence of that hole?

A.          I have no idea if they knew it or not.

Q.          Do you have–

A.          I would suggest no, but if caved in or the hole–how did the hole exist?

Q.          If the hole caved in, as you've just said, how is that something that could have been detected by the naked eye?

A.          It couldn't have been.

Q.          And so if the hole caved in, as you just suggested, how could Mission Park have known to look for a hole that was going to cave in?

A.          Unless it caved in earlier and they covered it up.

10

conclude that any equally plausible but opposite inference—for example, that this large hole located beside the grave existed only after Mission Park completed its preparations for the burial on the day of or the day before the service—may be drawn from the evidence before us in this no-evidence summary judgment review. *See id.* Furthermore, had it been uncovered, the large hole would have been conspicuous. And even covered and less conspicuous, the employees were present, in close proximity, for a continuous and significant period as they prepared the grave site for the burial service, and this could affect the jury's consideration of whether Mission Park should have become aware of the dangerous condition. *See Spates*, 186 S.W.3d at 567-68 (citing *Reese*, 81 S.W.3d at 816).

Therefore, applying the summary judgment standard of reviewing the evidence in the light most favorable to the non-movant and disregarding all evidence and inferences to the contrary, *see Tamez*, 206 S.W.3d at 582, based on the facts and circumstances presented in this case, we conclude that the evidence is more than a scintilla of probative evidence to raise a genuine issue of material fact as to Mission Park's constructive knowledge of the hole. *See Forbes*, 124 S.W.3d at 172; *Ortega*, 97 S.W.3d at 772. Reasonable and fair-minded individuals could differ in their conclusions regarding whether the hole had existed long enough for Mission Park to have discovered it or whether it existed long enough to give Mission Park a reasonable opportunity to discover and remedy it based on the size of the hole, its location, and the work done by Mission

---

Instead, this evidence supports the conclusion that Rivas's summary judgment evidence is more than meager circumstantial evidence and that a jury could reasonably infer that it is more likely than not that the dangerous condition existed long enough to give Mission Park a reasonable opportunity to discover the condition. *See Wal-mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 936, 936 (Tex. 1998).

11

Park's employees either the day of or the day before the burial service. *See Forbes*, 124 S.W.3d at 172; *see also CMH Homes*, 15 S.W.3d at 101; *Reece*, 81 S.W.3d at 816. Thus, we conclude that the trial court erred in granting Mission Park's no-evidence motion for summary judgment.

### B. TRADITIONAL SUMMARY JUDGMENT MOTION[4]

Rivas contends that the trial court also erred in granting Mission Park's traditional motion for summary judgment because Mission Park failed to conclusively negate the element of knowledge as a matter of law. *See Mason*, 143 S.W.3d at 798. In response, Mission Park argues that the evidence established it had no notice or knowledge of any allegedly unreasonably dangerous condition on the premises, and, thus, it negated the knowledge element of Rivas's premises liability claim. The evidence supporting Mission Park's motion for summary judgment includes the deposition testimony of Rivas, Campa, William R. Deuvall Jr., Mission Park's funeral director and embalmer since 1983, and Michael Hoffman Jr., a ten-year Mission Park employee and, at the time of his deposition, its general manager.

In addition to Rivas's testimony set out above, Rivas testified that he had "no idea if [Mission Park] knew [of the existence of the hole] or not." Rivas also agreed that he did not know what was done to inspect or maintain the area in question and did not have any facts in his possession about what Mission Park did or did not do. Finally, Rivas testified that there was nothing about the Astroturf which led him to think there might be a hole under the carpet.

---

[4] Having concluded that Rivas produced more than a scintilla of evidence under the rule 166a(i) burden, we next analyze whether Mission Park's summary judgment proof satisfies the rule 166a(c) burden. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

Campa testified regarding grave site preparation generally, although he did not recall digging this particular grave. Specifically, Campa testified that he would have opened the grave, cleaned out the area, laid out two boards on each side and one on each end of the grave, and placed plywood over the grave "so nobody w[ould] fall in." Campa also testified that his crews set out the tents and chairs. Campa also agreed that if the boards and the plywood are laid out correctly, nobody will fall into a grave.

Deuvall testified that, on the day of the funeral, he was in charge of the service. Deuvall saw the pallbearers carrying the casket but did not witness the incident itself. A funeral attendee told him that someone had fallen. According to his testimony, Deuvall prepared a written report stating that Rivas apparently stepped too close to the grave. Deuvall explained that he did not undertake an investigation because he heard that Rivas was okay. He also testified that he did not recall whether there was plywood covering the grave opening or whether any plywood or boards were removed following the service. Deuvall stated that he did not recall being there when they lifted up the carpet and did not recall whether there was any kind of indentation or hole next to the grave site.

Finally, Hoffman testified that he did not work the funeral and, therefore, did not witness the incident. Hoffman stated Deuvall provided a verbal report, not the written report referenced above. Deuvall told Hoffman that he had not witnessed the incident but that Rivas had apparently fallen and that Deuvall approached Rivas "following the commotion," asked him if he was okay, and was told he was fine. According to Hoffman, Deuvall did not specify whether Rivas had fallen into the grave or had just fallen carrying the casket and did not report that the carpet on which Rivas was walking had caved in.

13

When asked to describe a grave site preparation, Hoffman explained that "[t]he grave is marked, the site is checked, the site is checked again, the grave is pinned open and prepared" meaning that the grave is measured, opened, covered with plywood, and bordered with boards. Hoffman testified that the plywood is removed when the lowering device is set or placed on the boards that boarder the grave. According to Hoffman, carpeting is put down around the edge of the grave for aesthetic purposes.

Hoffman testified that he knew Rivas "did not fall into the grave" and explained that "[y]ou would have to go out of your way to go into a grave once everything's set," and "[i]t'd be near impossible to do, step inside of [the lowering device]." Hoffman also testified that it is impossible to dig a grave too big because every grave site is opened forty inches to accommodate the lowering device. In twenty years, Hoffman has never witnessed, or even heard of, anyone dropping down when he steps on the carpet. He agreed that Mission Park's employees should not leave an open hole in preparing a grave site and cover it with carpet, and he did not "see any way the carpet could give way or—into a hole. The lowering device itself is way outside the measurements of the opening of the grave."

While this evidence sets out how a grave site is prepared and how it is unlikely that someone would step over a lowering device and fall into a grave prepared in this manner, it is unrelated to whether Mission Park knew or had reason to know about the alleged grave site defect at issue in this case. Furthermore, Deuvall's report of the incident, whether written or verbal, provides no evidence that would support a conclusion that Mission Park had no constructive knowledge of the alleged defect. The referenced written report acknowledged that Rivas apparently stepped too close to the grave and fell,

14

and Deuvall's verbal report to Hoffman did not specify how Rivas fell. And no further investigation was undertaken because Rivas told Deuvall that he was okay. Finally, although Rivas testified that he had "no idea if [Mission Park] knew [of the existence of the hole] or not" and that there was nothing about the Astroturf which led him to think there might be a hole under the carpet, this does not establish that Mission Park's employees could not have, upon reasonable inspection, detected a hole earlier. The foregoing evidence, at most, is relevant to Mission Park's actual knowledge of the hole; it is not evidence that conclusively negates Mission Park's constructive knowledge, which is the relevant inquiry in this case.

Therefore, taking as true all evidence favorable to Rivas and indulging every reasonable inference and resolving all doubts in Rivas's favor, *see Valence Operating Co.*, 164 S.W.3d at 661, we conclude that Mission Park failed to carry its traditional summary judgment burden of conclusively negating the knowledge element of Rivas's premises liability claim. *See Mason*, 143 S.W.3d at 798; *Grinnell*, 951 S.W.2d at 425; *Clear Creek Basin Auth.*, 589 S.W.2d at 678. We cannot conclude that the evidence established as a matter of law that Mission Park had no notice or knowledge of any allegedly unreasonably dangerous condition on the premises, as it argues. Based on the evidence, reasonable people could differ as to their conclusions regarding whether Mission Park had constructive knowledge; whether it had a reasonable opportunity to discover the defect. *See City of Keller*, 168 S.W.3d at 816; *see also Reece*, 81 S.W.3d at 813. We thus conclude that the trial court also erred in granting Mission Park's traditional motion for summary judgment.

Accordingly, we sustain Rivas's sole issue on appeal.

15

## IV.    CONCLUSION

We reverse the trial court's order granting Mission Park's no-evidence and traditional motions for summary judgment and remand for proceedings consistent with this opinion.


NELDA V. RODRIGUEZ
Justice

Dissenting Memorandum Opinion by Justice Perkes.

Delivered and filed the
24th day of March, 2011.