

# NUMBER 13-10-00071-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

CYNTHIA FARIAS, AS NEXT FRIEND OF VIDAL
DE JESUS FARIAS, A MINOR,                                    **Appellant,**

**v.**

ALLSTATE INSURANCE COMPANY AND ALLSTATE
PROPERTY AND CASUALTY INSURANCE COMPANY,          **Appellee.**

### On appeal from the County Court at Law No. 1
### of Hidalgo County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Benavides
Memorandum Opinion by Chief Justice Valdez**

In this case, appellant, Cynthia Farias, as next friend of Vidal de Jesus Farias, a

minor ("Farias"), complains about a summary judgment granted in favor of appellee,

Allstate Insurance Company and Allstate Property and Casualty Insurance Company

("Allstate").  By two issues, Farias argues that:  (1) Allstate waived its "affirmative defense" of standing; and (2) she has standing to sue Allstate as a third-party beneficiary of the insurance policy between Allstate and its insured.  We affirm.

## I.    BACKGROUND

The dispute in this case pertains to an incident where Farias's eleven-year-old son was bitten by a dog owned by Jose Ocanas, an insured of Allstate.  In her original petition, Farias alleged the following:

> On or about October 3, 2005[,] 11-year-old Vidal de Jesus Farias was walking his family dog, a miniature schnauzer, near his home. Without provocation, Defendant Ocanas' [sic] dog attacked Vidal and bit him several times in the legs and buttocks.  Defendant Ocanas' [sic] housekeeper watched the whole thing and did nothing to get the dog off of Vidal even though Vidal was screaming for help.

> . . . .

> Plaintiff [Farias] filed a claim with the Allstate Defendants, the insurance companies that insure Defendant Ocanas[,] and they have denied the claim.

Farias further alleged that Allstate was liable for breach of contract, breach of the duty of good faith and fair dealing, negligence, and violating several provisions of the Texas Insurance Code, including sections 542.003, 542.055, 542.056, 542.057, and 542.058.[1] See TEX. INS. CODE ANN. §§ 542.003, 542.055, 542.056, 542.057, 542.058 (West 2009 & Supp. 2010).

Allstate entered a general denial denying all of the allegations contained in Farias's original petition.  Allstate later filed a traditional motion for summary judgment,

---

[1] Farias also alleged that Ocanas was negligent in the handling of the dog involved in the attack and was strictly liable for the injuries sustained by Vidal because Ocanas knew that the dog was vicious and dangerous.  In their appellate brief, Allstate mentions that the dog involved in the attack was "co-owned" by Ocanas and Jose Sepulveda.  Farias also filed suit against Sepulveda in a separate lawsuit. That case has been resolved.  The record reflects that Farias's claims against Ocanas were severed by court order on February 1, 2010, and Allstate asserts that these claims are still pending in the Hidalgo County district court.

alleging that Farias had failed to state a cause of action under Texas law. Specifically, Allstate contended that Farias's lawsuit "fails because Texas law does not recognize a direct cause of action in a third-party scenario against an insurer for the mishandling of a third-party claim." Allstate further argued that: (1) violations of chapter 542 of the insurance code do not apply in third-party scenarios; (2) Farias's breach of the duty of good faith and fair dealing causes of action do not apply in a third-party scenario; (3) Farias cannot maintain a breach of contract action against Allstate because there is no privity between Farias and Allstate and because Farias is not a third-party beneficiary; and (4) Farias's negligence cause of action must fail because Allstate did not owe a duty to either Farias or Vidal.

In her response to Allstate's traditional motion for summary judgment, Farias construed Allstate's arguments as attacking her standing to bring suit and asserted that Allstate failed to address the "Medical Payments Coverage" clause of Ocanas's policy in its motion. Farias further asserted that this clause "is a no-fault type of insurance" and, thus, her claims are not third-party claims and she has standing to sue as a third-party beneficiary. In its reply to Farias's response, Allstate argued that Farias was not a third-party beneficiary under the insurance contract between Allstate and Ocanas and that "[t]here is no distinction between medical payments coverage and other insurance coverage which entitles a third party to bring a direct action against the insurer for denial of medical benefits payments."

On June 2, 2009, the trial court conducted a hearing on Allstate's summary judgment motion. After hearing arguments from the parties, the trial court granted Allstate's summary judgment motion. This appeal followed.

## II.    STANDARD OF REVIEW

We review the granting of a traditional motion for summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *Branton v. Wood*, 100 S.W.3d 645, 646 (Tex. App.–Corpus Christi 2003, no pet.). In a traditional motion for summary judgment, the movant has the burden to establish that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002) (citing TEX. R. CIV. P. 166a(c); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979)). "[W]e take as true all evidence favorable to the non[-]movant, and we indulge every reasonable inference and resolve any doubts in the non[-]movant's favor." *Valence Operating Co.*, 164 S.W.3d at 661.

When, as in the present case, an order granting summary judgment does not state the specific grounds on which summary judgment was granted, we must affirm the trial court's judgment if any of the theories advanced are meritorious. *See W. Invs. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005); *Cincinnati Life Ins. Co. v. Cates*, 947 S.W.2d 608, 610 (Tex. 1997); *see also Rivas v. MPII, Inc.*, No. 13-09-00177-CV, 2011 Tex. App. LEXIS 2196, at *6 (Tex. App.–Corpus Christi Mar. 24, 2011, no pet. h.) (mem. op.).

## III.    ANALYSIS

### A. Farias's Waiver Contention

By her first issue, Farias asserts that Allstate waived its standing "affirmative defense" by not pleading it in its answer. We disagree.

4

Standing "focuses on whether a party has a sufficient relationship with the lawsuit so as to have a 'justiciable interest' in its outcome." *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). Essentially, a plaintiff has standing when she is personally aggrieved, regardless of whether she is acting with legal authority. *See Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996) (holding that the standing doctrine requires that there be (1) "a real controversy between the parties," that (2) "will be actually determined by the judicial declaration sought"). The complained-of injury "must be concrete and particularized, actual or imminent, not hypothetical." *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304-05 (Tex. 2008) (footnotes omitted); *see Tex. Lottery Comm'n v. Sci. Games Int'l*, 99 S.W.3d 376, 280 (Tex. App.–Austin 2003, pet. denied) (holding that "[t]o establish standing, one must show a justiciable interest by alleging an actual or imminent threat of injury peculiar to one's circumstances and not suffered by the public generally"); *see also Elizondo v. Tex. Natural Res. Conservation Comm'n*, 974 S.W.2d 928, 932 (Tex. App.–Austin 1998, no pet.) (citing *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975) (noting that the general standard for determining whether a plaintiff has standing is whether she has such a personal stake in the outcome of the controversy as to warrant invocation of the court's jurisdiction and to justify exercise of the court's remedial powers on her behalf)).

Furthermore, and perhaps most importantly with respect to this issue, standing is implicit in subject-matter jurisdiction and cannot be waived. *See Lovato*, 171 S.W.3d at 849; *see also Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). As such, challenges to standing can be raised at any time, including for the first time on appeal. *See Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 850 (Tex.

2000). Because the issue of standing cannot be waived, we reject Farias's contention that Allstate waived the issue of standing by failing to plead it in its answer. *See Lovato*, 171 S.W.3d at 849; *Gibson*, 22 S.W.3d at 850; *Tex. Ass'n of Bus.*, 852 S.W.2d at 443. Accordingly, Farias's first issue is overruled.

## B. Standing & Third-Party Beneficiary Status Under Allstate's Insurance Contract With Ocanas

By her second issue, Farias contends that she has standing to sue Allstate as a third-party beneficiary under Allstate's insurance contract with Ocanas. Specifically, she alleges that "Medical Payments Coverage" clause of Ocanas's policy confers third-party beneficiary status upon her and, thus, gives her standing to sue.

### 1. The "Medical Payments Coverage" Clause

We begin our analysis of this issue by examining the "Medical Payments Coverage" clause of the insurance contract between Ocanas and Allstate. The clause provides as follows:

> **COVERAGE D (Medical Payments to Others)**
>
> We will pay the necessary medical expenses incurred or medically determined within three years from the date of an accident causing **bodily injury**. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household. This coverage does apply to **residence employees**. As to others this coverage applies only:
>
> 1. to a person on the **insured location** with the permission of an **insured**.
>
> 2. to a person off the **insured location**, if the **bodily injury**:
>
>    a. arises out of a condition on the **insured location** or the ways immediately adjoining.
>
>    b. is caused by the activities of an **insured**.

6

c. is caused by a **residence employee** in the course of the **residence employee's** employment by an **insured**.

d. is caused by an animal owned by or in the care of an **insured**.

(Emphasis in original.) Farias argues that this language expressly provides a benefit for Vidal as a third-party beneficiary and, thus, confers standing upon her to sue Allstate for breach of contract on behalf of Vidal.[2]

### 2. Third-Party Beneficiaries

A stranger to a contract may enforce the contract as a third-party beneficiary if the parties to the contract intended to secure a benefit to that third party and entered into the contract directly for the third party's benefit. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006); *Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002); *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999); *In re Citgo Petroleum Corp.*, 248 S.W.3d 769 ,775 (Tex. App.–Beaumont 2008, orig. proceeding). The person claiming to be a third-party beneficiary must establish the existence of a contract and standing as a third-party beneficiary. *Paragon Sales Co. v. New Hampshire Ins. Co.*, 774 S.W.2d 659, 660 (Tex. 1989). A party is presumed to contract only for its own benefit; thus, any intent to benefit a third party must be clearly apparent. *MCI Telecomms. Corp.*, 995 S.W.2d at 652; *Corpus Christi Bank & Trust v. Smith*, 525 S.W.2d 501, 503-04 (Tex. 1975) (holding that in determining whether a third party may enforce or challenge a contract between others, it is the contracting parties' intent that controls); *In re Bayer Materialscience, LLC*, 265 S.W.3d 452, 456 (Tex. App.–Houston

---

[2] At the hearing on Allstate's summary judgment motion, Farias admitted that all of the causes of action alleged against Allstate in her original petition hinge upon whether the "Medical Payments Coverage" clause of Ocanas's insurance policy with Allstate confers third-party-beneficiary status upon her.

7

[1st Dist.] 2007, orig. proceeding). There is a presumption against, not in favor of, third-party beneficiary agreements. *MCI Telecomms. Corp.*, 995 S.W.2d at 652; *In re SSP Partners*, 241 S.W.3d 162, 170 (Tex. App.–Corpus Christi 2007, orig. proceeding); *see Marine Creek Partners, Ltd. v. Caldwell*, 926 S.W.2d 793, 795 (Tex. App.–Fort Worth 1996, no writ) (noting that establishing a contractual third-party beneficiary claim is a difficult burden; that courts presume that parties contracted only for themselves and not for the benefit of third parties, unless the obligation to the third party is clearly and fully spelled out; and that the party claiming third-party beneficiary status will succeed or fail according to the terms of the contract). Once some evidence has been produced to show a contract and standing as a third-party beneficiary, it is incumbent upon the opposing party to prove any defenses that would limit or bar recovery by the third-party beneficiary. *See Paragon Sales Co.*, 774 S.W.2d at 661.

Here, the "Medical Payments Coverage" clause does not specifically mention Farias or Vidal, nor does the plain language of the insurance policy indicate that Farias or Vidal were contemplated when Ocanas and Allstate entered into the insurance contract so that Farias or Vidal could bring any claim directly against Allstate. *See MCI Telecomms. Corp.*, 995 S.W.2d at 651 (stating that it is not enough that a third party benefits incidentally by the performance of a contract; that the contracting parties must have negotiated the provision with the third party expressly in mind; and that "[a] court will not create a third-party beneficiary contract by implication"); *see also Day Cruises Mar., L.L.C. v. Christus Spohn Health Sys.*, 267 S.W.3d 42, 57 (Tex. App.–Corpus Christi 2008, pet. denied) (noting that the burden is on the third party seeking to enforce the agreement to show that the agreement was intended for that party's direct benefit)

8

(citing *German Alliance Ins. Co. v. Home Water Supply Co.*, 226 U.S. 220, 230 (1912)). Moreover, the Texas Supreme Court has held that "an injured party cannot sue the tortfeasor's insurer directly until the tortfeasor's liability has been finally determined by agreement or judgment." *Angus Chem. Co. v. IMC Fertilizer, Inc.*, 939 S.W.2d 138, 138 (Tex. 1997) (per curiam) (citing *Great Am. Ins. Co. v. Murray*, 437 S.W.2d 264, 265 (Tex. 1969)); *see Ohio Cas. Ins. Co. v. Time Warner Entm't Co., L.P.*, 244 S.W.3d 885, 888 (Tex. App.–Dallas 2008, pet. denied).[3]

The record does not reflect that Ocanas's "liability has been finally determined by agreement or judgment." *Angus Chem. Co.*, 939 S.W.2d at 138; *see Murray*, 437 S.W.2d at 265; *see also Ohio Cas. Ins. Co.*, 244 S.W.3d at 888. Because Ocanas's

---

[3] In *Ohio Casualty Insurance Company v. Time Warner Entertainment Company, L.P.*, the Dallas Court of Appeals stated the following:

> "Texas is not a direct action state." *Jones v. CGU Ins. Co.*, 78 S.W.3d 626, 629 (Tex. App.–Austin 2002, no pet.). In other words, "[a] tort claimant has no direct cause of action against the tortfeasor's liability insurer until the insured-tortfeasor is adjudged liable to the tort claimant." *Id.*; *accord Angus Chem. Co. v. IMC Fertilizer, Inc.*, 939 S.W.2d 138, 138 (Tex. 1997) (per curiam) ("In Texas, the general rule (with exceptions not relevant here) is that an injured party cannot sue the tortfeasor's insurer directly until the tortfeasor's liability has been finally determined by agreement or judgment."); *State Farm County Mut. Ins. Co. of Tex. v. Ollis*, 768 S.W.2d 722, 723 (Tex. 1989) ("[An injured third party] cannot enforce the policy directly against the insurer until it has been established, by judgment or agreement, that the insured has a legal obligation to pay damages to the injured party.").
>
> . . . .
>
> There is also a public-policy basis for the rule, which is the prevention of the conflict of interest that could arise if a third-party claimant were permitted to sue an insurer before obtaining judgment against the insured. . . . We have construed this rule as being a rule of standing.

244 S.W.3d 885, 888 (Tex. App.–Dallas 2008, pet. denied); *see Owens v. Allstate Ins. Co.*, 996 S.W.2d 207, 208-09 (Tex. App.–Dallas 1998, pet. denied) (dismissing an interpleader action brought by a liability insurer against third-party claimants for lack of standing and justiciability); *Sun Oil Co. v. Employers Cas. Co.*, 550 S.W.2d 348, 349 (Tex. Civ. App.–Dallas 1977, no writ) ("[U]ntil [the insured's] obligation is established by a final judgment, [Sun Oil] has no standing to sue the insurers as a third-party beneficiary.").

liability has not been finally determined by agreement or judgment and because the language of the "Medical Payments Coverage" clause does not overcome the strong presumption against conferring third-party-beneficiary status to Farias, we conclude that Farias lacks standing in this matter. *See Angus Chem. Co.*, 939 S.W.2d at 138; *Murray*, 437 S.W.2d at 265; *Day Cruises Mar., L.L.C.*, 267 S.W.3d at 57 ("Christus therefore did not meet its burden in showing that the Guarantee was intended for its benefit, and so it did not have standing to enforce the Guarantee as a third-party beneficiary."); *Ohio Cas. Ins. Co.*, 244 S.W.3d at 888; *Sun Oil Co.*, 550 S.W.2d at 349; *see also Inman*, 252 S.W.3d at 304-05; *Lovato*, 171 S.W.3d at 848; *Nootsie, Ltd.,* 925 S.W.2d at 661. As a result, we cannot say that the trial court erred in granting summary judgment in favor of Allstate. *See Urena*, 162 S.W.3d at 550; *Grant*, 73 S.W.3d at 215; *Cates*, 947 S.W.2d at 610. We, therefore, overrule Farias's second issue.

## IV. CONCLUSION

Having overruled both of Farias's issues, we affirm the judgment of the trial court.

 

 

_____
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
2nd day of June, 2011.

10