

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00059-CV

_____

JAMES J. NAPLES, Appellant

V.

M. MARK LESHER AND WIFE, RHONDA LONG LESHER, Appellees

On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 09C1459B-005

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

# MEMORANDUM OPINION

The alliance of James J. Naples, M. Mark Lesher, and Ramchandra Gurav soured when Naples accused Lesher of selling the timber on their jointly-owned property and also of keeping more than his share of the proceeds generated from the property's mineral income. Consequently, Naples sued Lesher for damages.

Lesher filed motions for summary judgment as to all of Naples' and Gurav's claims arising from the timber cutting and the mineral interest payments.[1] The trial court granted the motions as to some claims and denied them as to other claims. The trial court severed the claims upon which it granted summary judgment, and those claims are the subject of this appeal.

Appellants contend that the trial court erred in dismissing: (1) their mineral claims for breach of the partnership agreement; (2) Gurav's mineral claim of fraud by nondisclosure; (3) their timber claims under the Natural Resources Code; (4) Naples' timber claim for breach of the partnership agreement; and (5) their timber claims for breach of fiduciary duty.

We affirm the trial court's order granting summary judgment as to (a) the Appellants' mineral claims for breach of the partnership agreement and Gurav's mineral claim of fraud by nondisclosure to the extent that they relate to any mineral payments occurring prior to January 1, 2006, (b) the Appellants' timber claims under the Texas Natural Resources Code, and (c) Naples' timber claim for breach of the partnership agreement.

---

[1]Gurav died in 2011. Naples acquired all interests of Gurav and his wife in the property, and he asserts Gurav's claims on appeal together with his. For ease of reference, we will maintain the distinction between Naples' and Gurav's claims and will refer to Gurav's claims as if he were asserting them himself. Further, we will refer to Naples and Gurav, collectively, as the Appellants.

We reverse and remand the trial court's order of summary judgment as to: (a) the Apellants' mineral claims for breach of the partnership agreement and Gurav's mineral claim of fraud by nondisclosure to the extent that they relate to any mineral payments made on or after January 1, 2006, and (c) the Appellants' timber claims for breach of fiduciary duty.

## I. Factual Background

A 648-acre tract of real property near Redwater, Texas, (the Redwater Property) which apparently had been previously owned by Henry Earl Fagan and wife, was sold to Naples on April 5, 1983, by a deed executed by substitute trustee, Lesher. In 1987, by written partnership agreement, Gurav, Lesher and Naples formed the GLN Partnership. Under the agreement, the Redwater Property, along with $460,000.00 in cash, was to be contributed as capital for the partnership. In the agreement, Naples warranted that he had full power to convey the Redwater Property. However, it is undisputed that the Redwater Property was never conveyed into the partnership.[2]

During a period relevant to this case, much of the Redwater Property was subject to an oil and gas lease. Naples owned the mineral rights in his own name, and after the formation of the GLN Partnership, Lesher acquired, in his own name, the working interest in the Redwater Property. Payments for the royalties were made payable to Naples and the working interest payments were made payable to Lesher, though both the royalties and the working interest payments were mailed to Lesher's office. The parties dispute whether these interests were held by the individual, the partnership, or for the benefit of the partnership's three named partners.

---

[2]A deed dated March 11, 1983, purporting to convey the Redwater Property to Gurav, Lesher and Naples in their individual capacities, equally as co-tenants, was filed for record in 2002.

3

The dispute in this case concerns the proper division of proceeds generated from the mineral income and sale of timber from the Redwater Property.

On October 13, 2009, Naples filed suit against Lesher and his wife, Rhonda Long Lesher, raising various causes of action based on the allegation that Lesher cut all the merchantable timber on the Redwater Property. Ten months later, on August, 30, 2010, on his own behalf and that of Gurav,[3] Naples filed a first amended petition alleging various causes of action against Lesher for allegedly failing to pay him and Gurav their proper share of the timber and mineral proceeds.[4]

## II.    Standard of Review

A traditional motion for summary judgment is granted only when the movant establishes that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review de novo the grant or denial of a motion for summary judgment "to determine whether a party's right to prevail is established as a matter of law." *Lamar Corp. v. City of Longview*, 270 S.W.3d 609, 613 (Tex. App.—Texarkana 2008, no pet.); *see Nash v. Beckett*, 365 S.W.3d 131, 136 (Tex. App.—Texarkana 2012, pet. denied) (citing *Fielding*, 289 S.W.3d at 848).

When reviewing the grant of a traditional summary judgment, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308,

---

[3]Gurav assigned to Naples all claims that Gurav may have related to the Redwater Property.

[4]The trial court denied summary judgment on Naples' and Gurav's mineral claims for breach of fiduciary duty because of a trust and Naples' timber claim for fraud by nondisclosure. The trial court also denied summary judgment as to Naples' and Gurav's timber claims for waste and trespass by permanent injury.

4

311 (Tex. 2002); *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). On appeal, the movant must show that there is no material fact issue and that the movant is entitled to judgment as a matter of law. *McNamara*, 71 S.W.3d at 311; *Steel*, 997 S.W.2d at 223; *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671 (Tex. 1979).

"To defeat a plaintiff's cause of action on a traditional motion for summary judgment, the defendant must either 'conclusively negate an element of the plaintiff's claim or conclusively establish every element of an affirmative defense.'" *Stovall & Assocs. v. Hibbs Fin. Ctr., Ltd.*, 409 S.W.3d 790, 795 (Tex. App.—Dallas 2013, no pet.) (quoting *Ohio Cas. Ins. Co. v. Time Warner Entm't Co., L.P.*, 244 S.W.3d 885, 888 (Tex. App.—Dallas 2008, pet. denied)). "A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence." *Id.* (citing *Holloway v. Dekkers*, 380 S.W.3d 315, 320 (Tex. App.—Dallas 2012, no pet.)). "The defendant, however, is not required to respond with evidence if deficiencies in the plaintiff's own proof or legal theories will defeat the movant's right to judgment as a matter of law." *Id.* (citing *Clear Creek Basin Auth.*, 589 S.W.2d at 678).

### III.    Mineral Claims

On or about December 2, 2005, Lesher's office received four different checks from Energytec, Inc., the production company operating the oil and/or gas wells on the Redwater Property. Three of the checks were for (1) the working interest from January 1, 2003, through August 31, 2005 ($53,295.00), (2) a settlement of the unpaid royalties prior to January 1, 2003 ($60,000.00), (3) and royalties from January 1, 2003, through August 31, 2005 ($116,846.79), respectively, for a total of $230,141.79. The fourth check consisted of the proceeds of Lesher's

5

sale of the working interest in the Redwater Property ($100,000.00). From January 15, 2006, through December 1, 2006, Energeytec, Inc., also mailed to Lesher's office, various royalty checks, made payable to Naples totaling $55,339.48. A letter from Naples' attorney to Gurav's attorney, dated December 14, 2005, notes that Energytec, Inc., sent to Lesher's office checks for mineral "payments totaling $230,141.79". The letter also states that Energytec, Inc., has offered to purchase the working interest in the Redwater Property, then owned by Lesher, for $100,000.00, and that Lesher and Naples agreed that the offer should be accepted.

In their petition, Naples alleged that Lesher failed to pay him his share of the royalty payments made in 2006, and Gurav claimed that Lesher failed to pay him his share of both the December 2005 royalty and working interest payments, as well as the 2006 royalty payments.[5] Based on those allegations, both Naples and Gurav made claims for breach of the partnership agreement, and Gurav also raised a cause of action for fraud by nondisclosure. The trial court held that all of these claims were barred by the statute of limitations. The Appellants contend that the trial court erred because the discovery rule tolled the statute of limitations and there were genuine issues of material fact as to when Lesher's failure to pay was discovered.

The statute of limitations for breach of a partnership agreement and fraud by nondisclosure is four years. TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(4), (c) (West 2002), § 16.051 (West 2008). "A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense." *Velsicol Chem. Corp. v. Winograd*, 956 S.W.2d 529, 530 (Tex. 1997). Therefore, Lesher must conclusively

_____

[5]Unless otherwise noted, the term "mineral payments" will be used to include royalties, working interest, and the proceeds of selling the working interest.

prove when the cause of action accrued, and, because Naples and Gurav pled the discovery rule, Lesher must also negate the discovery rule by proving as a matter of law that there is no genuine issue of material fact about when the Appellants discovered, or in the exercise of reasonable diligence should have discovered, the nature of their injuries. *See KPMG Peat Marwick v. Harrison Cnty. Housing Fin. Corp*., 988 S.W.2d 746, 748 (Tex. 1999).

The date that a cause of action accrues is a question of law. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990); *Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex. 1988). "A cause of action generally accrues, and the statute of limitations begins to run, when facts come into existence that authorize a claimant to seek a judicial remedy." *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex. 1998), *superseded by statute on other grounds*, TEX. FIN. CODE ANN. § 304.1045 (West 2006).

The discovery rule defers the accrual of a cause of action until the plaintiff knows, or by exercising reasonable diligence should know, of the facts giving rise to his claim. *Barker v. Eckman*, 213 S.W.3d 306, 311–12 (Tex. 2006); *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 279 (Tex. 2004); *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998). The discovery rule is a very limited exception to statutes of limitations, and its application is generally restricted "to exceptional cases to avoid defeating the purposes behind the limitations statutes." *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006). Because the discovery rule is a plea in confession and avoidance, a party seeking to avail itself of the discovery rule must plead the rule as a matter in avoidance. *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517–18 (Tex. 1988). The discovery rule delays accrual only if the injury was both inherently

7

undiscoverable and objectively verifiable. *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996). "An injury is not inherently undiscoverable when it is the type of injury that could be discovered through the exercise of reasonable diligence." *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 66 (Tex. 2011).

The letter from Naples' attorney to Gurav's attorney[6] of December 14, 2005, advising Gurav of the mineral payments received by Lesher and the offer to purchase the working interest is evidence that, as of December 2005, both Naples and Gurav were aware of the various mineral-related payments Energytec, Inc., sent to Lesher in December 2005. The letter gave Gurav reason to inquire as to whether he received his share of those payments; therefore, he cannot avail himself of the discovery rule as it relates to the payments. However, Lesher received other royalty payments in 2006 which are not mentioned in the 2005 letter from Naples' attorney to Gurav's attorney. Since the letter does not mention any mineral payments expected in 2006 and no other evidence placed Naples and/or Gurav on notice of the mineral payments, Lesher has failed to conclusively negate the discovery rule as to the 2006 payments. Summary judgment was improper as to those 2006 payments.

We overrule this point of error and affirm the summary judgment insofar as it relates to the payments made in December 2005. We sustain this point of error, reverse and remand the summary judgment, insofar as it relates to the mineral payments made in 2006.

---

[6]It is undisputed that Gurav's attorney received the letter and passed it on to Gurav.

8

## IV.    Timber Claims

At some point in the spring and/or early summer of 2005, Lesher cut a portion of the timber off of the Redwater Property and sold it. On June 6, 2007, Naples' attorney sent a threatening letter to Gurav's attorney accusing Gurav and Lesher of cutting the timber without consulting Naples and failing to account for and distribute his (Naples') share of the proceeds. The letter stated, in pertinent part, that Naples had "discovered that timber on the property was clear cut (over at least 200 acres) during the time that Dr. Naples was in federal detention (March 16–20, 2004)." In his deposition, Gurav testified that the letter was his first knowledge of Naples' claim that the timber had been cut.

Ultimately, Naples sued Lesher alleging that Lesher failed to pay Naples and Gurav their share of the timber proceeds. Naples asserted a cause of action for breach of the partnership agreement, and Naples and Gurav made claims for violation of Section 151.051 of the Texas Natural Resources Code and breach of fiduciary duty under the partnership agreement.

### A.    Fraudulent Concealment

The trial court found that the statute of limitations barred Naples' timber claim for breach of the partnership agreement and the Apellants' timber claims under Section 151.051 of the Texas Natural Resources Code.[7] Naples and Gurav contend that the trial court erred because (a)

---

[7]In this case, the timber was allegedly cut prior to September 2011, when the relevant portion of Section 151.051(a) of the Texas Natural Resources Code stated,

> A person who harvests standing timber with knowledge that the harvesting is without the permission of the owner of the standing timber and a person who causes another person to harvest standing timber without the permission of the owner of the standing timber are jointly and severally liable to the owner for damages in an amount equal to three times the market price of the timber harvested without permission.

9

Lesher failed to negate the discovery rule and (b) the Appellants raised an issue of material fact as to whether Lesher fraudulently concealed the timber cutting and sale.

Claims under Section 151.051 of the Texas Natural Resources Code must be brought within two years. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003 (West Supp. 2013). There is a four-year statute of limitations for breach of a partnership agreement. TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(c).

The record reflects the timber was cut in the spring and early summer of 2005. Naples filed his timber claims on October 13, 2009, while Naples filed timber claims on Gurav's behalf on August 30, 2010.

Naples and Gurav pled the discovery rule, claiming that they did not know of the timber cutting until years after the timber was cut. Lesher had the burden to prove, through undisputed facts, when Naples and Gurav knew or should have known of the timber cutting and that the statute of limitations expired before they filed their respective lawsuits. *See Barker*, 213 S.W.3d at 311–12.

Naples claimed that he did not know until August 2009 that the timber had been cut. In response, Lesher points to a letter dated June 6, 2007, from Naples' attorney to Gurav's attorney, stating, in relevant part,

---

Acts of May 17, 2001, 77th Leg., R.S., ch. 532, § 1, sec. 151.051(a), 2001 Tex. Gen. Laws 1007, 1010 (amended 2011) (current version at TEX. NAT. RES. CODE ANN. § 151.051(a) (West Supp. 2013)).

By its plain language, the former Section 151.051 applied only to timber harvested without the permission of the owner. *Id.* The record before us does not conclusively establish whether or not, at the time the timber was harvested, Lesher owned the property in cotenancy with Naples and/or Gurav. If, at the time the timber was harvested and sold, Lesher was an owner in cotenancy with Naples and/or Gurav, Section 151.051 is inapplicable, because, as an owner, he could sell the timber without the permission of his cotenants. *See Green v. Crawford*, 662 S.W.2d 123 (Tex. App.—Tyler 1983, writ ref'd n.r.e.). However, the applicability of the Texas Natural Resources Code was neither raised by the parties at trial, nor argued on appeal.

> Regarding the Redwater farm, Dr. Naples has discovered that timber on the property was clear cut (over at least 200 acres) during the time that Dr. Naples was in federal detention (March 16 – 20, 2004).

The letter accuses Gurav and/or Lesher of cutting the timber without consulting Naples and failing to account for and distribute his (Naples') share of the proceeds. In his deposition, Naples testified that he "had gone down there [to the property] and looked, but [he] didn't see anything cut." He also stated that his attorney wrote the letter at his direction, that he was familiar with the letter's contents, but that his attorney "got a little mixed up" and "got the sequence of events wrong." In his deposition, Gurav testified that the letter was his first knowledge of any claim that the timber had been cut.

As an attachment to his response to Lesher's motion for summary judgment, Naples included an affidavit stating that he did not know that the timber on the Redwater Property had been clear cut until August 2009.[8] The affidavit states that Naples allowed Keith Self to hunt on the Redwater Property and that in the spring of 2007, Self reported to him that he had been forced off the Redwater Property by Lesher's son, who claimed his father owned the land. Self described the area where he was hunting as having been "clear cut." Naples avers that, because he did not know of any timber cuts on the Redwater Property, he assumed that Self had wandered onto neighboring property. During that spring, Naples was negotiating a "business divorce" from Gurav and advised his attorney of the information he had received from Self about

---

[8]Lesher argues that, under the sham affidavit rule, Naples' affidavit testimony should be disqualified to the extent it contradicts his deposition testimony. Under the sham affidavit rule, a party cannot file an affidavit that contradicts that party's own deposition testimony, without explanation, for the purpose of creating a fact issue to avoid summary judgment. *Tejada v. Gernale*, 363 S.W.3d 699, 707 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Burkett v. Welborn*, 42 S.W.3d 282, 286 (Tex. App.—Texarkana 2001, no pet.). Here, Naples' affidavits do not directly conflict with his deposition testimony, and to the extent they conflict with the June 6, 2007, letter, the affidavits included an explanation. Therefore, the affidavits may be considered as summary judgment evidence.

a clear cut "for the purpose of justifying a lower purchase price for Gurav's interest" even though Naples had no "direct knowledge" of the status of the timber. Naples alleges that this letter incorrectly attributes personal knowledge of the timber cut to him. Naples alleges that, in October 2007, Lesher denied that any timber had been harvested from the Redwater Property. After a survey of the Redwater Property was completed in August 2009, Naples learned that the merchantable timber had been removed.

Accepting as true all facts favorable to Naples and Gurav, the uncontroverted evidence shows that at least by June 6, 2007, Naples notified Lesher and Gurav not only that he had "discovered" that timber had been cut, but that he, according to his attorney's letter, suspected both Lesher and Gurav of cutting the timber. While this letter may have "mixed up" some of the facts, without doubt it demonstrates Naples' specific knowledge that over 200 acres of timber was missing. Fraudulent concealment only tolls the statute of limitations until the fraud is discovered or by the exercise of reasonable diligence could have been discovered. *Marshall*, 342 S.W.3d at 67. Whether Naples believed, as stated in his attorney's letter, that Lesher and Gurav had cut the timber or only had a report that timber was clear cut on or near the Redwater Property, without obtaining a precise description of the location or further investigating, as stated in his affidavit, he was aware of sufficient facts to require that he act with reasonable diligence to discover an injury that could be verified without expert assistance. With the undisputed evidence, to defer the running of the statute of limitations, Naples was required to exercise reasonable diligence to determine the facts giving rise to the claim. Otherwise, the statute of limitations was tolled, at most, only until June 2007, when the attorney's letter shows their

12

knowledge of the alleged cutting. As both Naples' and Gurav's claims were filed more than two years after the June 2007 letter acknowledging the cutting, the statute of limitations bars their recovery for the timber claims.

## B. Fiduciary Duties

The trial court granted Lesher's motion for summary judgment on the Appellants' fiduciary duty claims because it found that "there was no duty created by the GLN Partnership Agreement."[9] On appeal, the Appellants argue the narrow point that the trial court erred because the partnership agreement created fiduciary duties between Gurav, Lesher, and Naples, as partners.[10]

It is well-settled law (1) that partners owe each other and the partnership a fiduciary-like duty in the conduct of partnership business and (2) that liability flows from a breach of that duty. *Meyer v. Cathey*, 167 S.W.3d 327, 330–31 (Tex. 2005); *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998); *Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 508 (Tex. App.—Houston [1st Dist.] 2003, no pet.). The parties do not dispute that they entered into the partnership agreement and were equal partners in the GLN partnership. As partners, Gurav, Lesher, and Naples owed each other and their partnership a fiduciary duty in the conduct of

---

[9]The statute of limitation was not raised as a defense on this issue.

[10]The Appellants also contend that the trial court erred in granting summary judgment on their claims for breach of fiduciary duty because Lesher failed to request summary judgment on those issues in his motions. However, in their motion for a new trial, Naples and Gurav admitted that Lesher's motions "asserted that the claims . . . based upon [Lesher's] breach of partnership and/or fiduciary duties were unsupported as a matter of law" and that "[the Appellants] provided legal authority for the existence of partnership and/or fiduciary duties." As the Appellants have admitted that the issue was raised and argued before the trial court, we overrule this point of error.

partnership business. Accordingly, we sustain this point of error and reverse and remand the Appellants' timber claims for breach of fiduciary duty.[11]

In summary, we affirm the trial court's order granting summary judgment as to (1) the Appellants' mineral claims for breach of the partnership agreement and Gurav's mineral claim of fraud by nondisclosure to the extent that they relate to any mineral payments or proceeds occurring prior to January 1, 2006, (2) the Appellants' timber claims under the Texas Natural Resources Code, and (3) Naples' timber claim for breach of the partnership agreement.

We reverse and remand the trial court's order of summary judgment as to (1) the Apellants' mineral claims for breach of the partnership agreement, Gurav's mineral claim of fraud by nondisclosure to the extent that they relate to any mineral payments or proceeds made on or after January 1, 2006, and (2) the Appellants' timber claims for breach of fiduciary duty.


                                            Jack Carter
                                            Justice


Date Submitted:        January 30, 2014
Date Decided:          May 8, 2014


---

[11]At trial, the Appellants extensively argued the issue of equitable title; however, the Appellants failed to raise that issue on appeal. Because the Appellants abandoned these issues, we express no opinion on whether the partnership owned the Redwater Property, whether the timber sale amounted to partnership business, or whether the partners had a duty to share the timber proceeds.

14