OHIO CASUALTY INSURANCE COMPANY and West American Insurance Company, Appellants

v.

TIME WARNER ENTERTAINMENT COMPANY, L.P., Appellee.

No. 05–06–01437–CV.

Court of Appeals of Texas, Dallas.

Feb. 6, 2008.

R. Brent Cooper, Michelle E. Robberson, Nathan P. Pekar, Cooper & Scully, P.C., Dallas, for Appellants.

Steven E. Kennedy, McGuire, Craddock & Strother, P.C., Dallas, for Appellee.

Before Justices LANG, LANG–MIERS, and MAZZANT.

## OPINION

Opinion by Justice MAZZANT.

Time Warner Entertainment Company, L.P. sued appellants for policy proceeds, claiming that it was an additional insured on certain liability insurance policies and that the named insured on those same policies had negligently caused Time Warner to suffer certain losses. The trial court granted summary judgment for Time Warner. For the following reasons, we reverse and remand for further proceedings.

### I. Background

#### A. Facts

Time Warner, which was the plaintiff in the court below, alleges that it was hired to construct a fiber-optic communications loop in and around Plano, Texas. It subcontracted a part of that work to a company called Signal Images Telecommunications, Inc., which in turn subcontracted much of its work to others. Evidence shows that Signal performed its work from April 19, 2001 through February 2002. During that time period, appellant West American Insurance Company insured Signal under a commercial general liability (CGL) policy, and appellant Ohio Casualty Insurance Company insured it under a commercial umbrella policy. West American and Ohio Casualty (the "Insurers") made Time Warner an additional insured on those policies.

Time Warner alleges that Signal and its subcontractors negligently performed their work, causing damage both to the work itself and to surrounding property. Specifically, Time Warner alleges that Signal's negligence and negligent supervision of its subcontractors caused some of the fiber-

optic cables to be installed outside of the proper easements and also caused some of the cable to be buried at a depth shallower than permitted by the contract. Time Warner further alleges that it spent over $1.5 million to repair and correct the damage caused by Signal. It contends that it had to spend those sums to avoid liability to the owner of the project for breach of contract and to avoid liability in trespass to property owners around the easement.

Signal sued Time Warner for nonpayment, and Time Warner counterclaimed against Signal. The parties agree that this underlying lawsuit has been abated and remains pending in the trial court.

## B. Procedural history of this case

Time Warner then sued the Insurers for declaratory judgment and attorneys' fees. In its original petition, it alleged that a company called Time Warner Cable Construction Division ("TWCCD") contracted with Signal for the construction work, and that TWCCD spent the $1.5 million to repair and correct Signal's work. Time Warner asked for a declaration that "the claims made by TWCCD for its property damage caused by Signal and its subcontractors are covered occurrences mandating payment by the Insurers." The Insurers answered and filed a plea in abatement contending that Time Warner's lawsuit against them was an improper direct action. The trial court denied the plea in abatement because it was not verified. A supplemental clerk's record containing an amended plea in abatement has been filed with our Court, but we find no order reflecting a ruling on the amended plea.

The Insurers moved for summary judgment on the entire case. Time Warner filed a motion for summary judgment seeking a declaration of coverage and damages for the cost of removing cable and replacing damaged cable. Each side responded to the other's motion. Seven days before the hearing on both motions, Time Warner amended its petition to delete all references to TWCCD and to allege that Time Warner itself had spent over $1.5 million to repair and correct Signal's work. Time Warner also added a claim for breach of contract. The trial court denied the Insurers' motion and granted Time Warner's motion "on the issue of Defendants' duty to indemnify."

Time Warner then filed a motion for final summary judgment in which it quantified its damages and attorneys' fees, and the Insurers responded. The trial court granted Time Warner's motion and signed a final judgment that awarded Time Warner damages in the amount of $1,361,024.42, plus attorneys' fees and interest. The Insurers appealed.

## II.  Standard of Review

Insurers do not complain on appeal about the denial of their plea in abatement. Rather, they argue that the trial court erred by granting Time Warner's motions for summary judgment and denying Insurers' motion for summary judgment.

We review the trial court's summary judgment de novo. *Tex. Mun. Power Agency v. Pub. Util. Comm'n,* 51 Tex. Sup.Ct. J. 216, 221 (Dec. 14, 2007). When both parties move for summary judgment, each bears the burden of establishing that it is entitled to judgment as a matter of law. If the trial court grants one motion and denies the other, the non-prevailing party may appeal the granting of the prevailing party's motion as well as the denial of its own motion. We review the summary-judgment evidence presented by both parties and determine all questions presented. We may affirm the trial court's summary judgment, reverse and render judgment for the other party if appropriate, or reverse and remand if nei-

ther party has met its summary-judgment burden. *Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n,* 205 S.W.3d 46, 50 (Tex.App.-Dallas 2006, pet. denied).

■ To win summary judgment on its own cause of action, a plaintiff must establish every element of its claim as a matter of law. *Nelson v. Regions Mortgage, Inc.,* 170 S.W.3d 858, 864 (Tex.App.-Dallas 2005, no pet.). To defeat a plaintiff's cause of action on a traditional summary-judgment motion, a defendant must either conclusively negate an element of the plaintiff's claim or conclusively establish every element of an affirmative defense. *Case Corp. v. Hi-Class Bus. Sys. of Am., Inc.,* 184 S.W.3d 760, 776 (Tex.App.-Dallas 2005, pet. denied). Evidence favorable to the nonmovant must be taken as true, and every reasonable inference from the evidence must be drawn in favor of the nonmovant. *Hackberry Creek Country Club, Inc.,* 205 S.W.3d at 50.

### III. Analysis

#### A. Standing

In their first issue, the Insurers contend that the trial court erred by granting summary judgment for Time Warner. Insurers argue that Time Warner lacks standing to sue them for policy proceeds via their coverage of the named insured, Signal, and that Time Warner adduced no evidence of a claim against it to trigger its own coverage as an additional insured. We agree with the Insurers.

#### 1. Time Warner did not establish a right to policy proceeds via its claim against the named insured, Signal.

■ "Texas is not a direct action state." *Jones v. CGU Ins. Co.,* 78 S.W.3d 626, 629 (Tex.App.-Austin 2002, no pet.). In other words, "[a] tort claimant has no direct cause of action against the tortfeasor's lia-

bility insurer until the insured-tortfeasor is adjudged liable to the tort claimant." *Id.; accord Angus Chem. Co. v. IMC Fertilizer, Inc.,* 939 S.W.2d 138, 138 (Tex.1997) (per curiam) ("In Texas, the general rule (with exceptions not relevant here) is that an injured party cannot sue the tortfeasor's insurer directly until the tortfeasor's liability has been finally determined by agreement or judgment."); *State Farm County Mut. Ins. Co. of Tex. v. Ollis,* 768 S.W.2d 722, 723 (Tex.1989) ("[An injured third party] cannot enforce the policy directly against the insurer until it has been established, by judgment or agreement, that the insured has a legal obligation to pay damages to the injured party."). The rule is well-settled and discussed by many commentators. *E.g.,* 1 ROWLAND H. LONG, THE LAW OF LIABILITY INSURANCE § 1.06[1] (2007); 7A LEE R. RUSS ET AL., COUCH ON INSURANCE 3D § 104:2 (2005); 2 ALLAN D. WINDT, INSURANCE CLAIMS & DISPUTES: REPRESENTATION OF INSURANCE COMPANIES AND INSUREDS § 9:10 (5th ed.2007).

■ The roots of the no-direct-action rule seem to lie in the no-action clause commonly found in liability insurance policies. *See, e.g., Getty Oil Co. v. Ins. Co. of N. Am.,* 845 S.W.2d 794, 801 (Tex.1992); *Great Am. Ins. Co. v. Murray,* 437 S.W.2d 264, 265 (Tex.1969). These clauses provide that no action will lie against an insurer until its insured's obligation to pay has been fixed by judgment or by an agreement that includes the insured, the insurer, and the claimant. *Great Am. Ins. Co.,* 437 S.W.2d at 265. "Under such a policy a third party's right of action against the insurer does not arise until he has secured such an agreement or a judgment against the insured." *Id.* There is also a public-policy basis for the rule, which is the prevention of the conflict of interest that could arise if a third-party claimant were permitted to sue an insurer before obtaining

judgment against the insured. *Cessna Aircraft Co. v. Aircraft Network, L.L.C.,* 213 S.W.3d 455, 460 (Tex.App.-Dallas 2006, pet. filed). We have construed this rule as being a rule of standing. *Id.* at 460–61; *Sun Oil Co. v. Employers Cas. Co.,* 550 S.W.2d 348, 349 (Tex.Civ.App.-Dallas 1977, no writ) ("[U]ntil [the insured's] obligation is established by a final judgment, [Sun Oil] has no standing to sue the insurers as a third-party beneficiary.") (citing *Great American Insurance Co.,* among other authorities); *see also Owens v. Allstate Ins. Co.,* 996 S.W.2d 207, 208–09 (Tex.App.-Dallas 1998, pet. denied) (dismissing interpleader action brought by liability insurer against third-party claimants for lack of standing and justiciability). Thus, the Insurers properly invoked lack of standing as a ground for denial of Time Warner's motion for summary judgment to the extent that Time Warner relied on the Insurers' coverage of Signal as a basis for recovery.

Time Warner tries to distinguish the no-direct-action cases by pointing out that they generally involve direct actions by strangers to the insurance policy. Time Warner, by contrast, is an additional insured under the policies involved in the instant case. This factual distinction, however, does not negate the applicability of the general rule to the extent Time Warner is contending that the Insurers owe it money because of their contractual obligations to cover Signal's liabilities. *Cf. Rumley v. Allstate Indem. Co.,* 924 S.W.2d 448, 449–50 (Tex.App.-Beaumont 1996, no writ) (wife could not sue husband's auto liability insurer for extra-contractual damages even though she was also a named insured on the same policy because, in that particular dispute, she "assumed the posture of a third-party claimant"). To that extent, the rule prohibiting direct actions before judgment bars Time Warner's claim.

■ "The determination of whether a plaintiff possesses standing to assert a particular claim depends on the facts pleaded and the cause of action asserted." *Mazon Assocs., Inc. v. Comerica Bank,* 195 S.W.3d 800, 803 (Tex.App.-Dallas 2006, no pet.). Here, Time Warner neither pleaded nor proved that Signal's liability to Time Warner has been determined by judgment or settlement. In fact, it averred in its own motion for summary judgment that its lawsuit against Signal had been abated in favor of the coverage litigation against the Insurers. Accordingly, the trial court erred by granting summary judgment in favor of Time Warner to the extent the court based its judgment on the Insurers' coverage of Signal.

**2. Time Warner did not establish a right to policy proceeds based on its status as an additional insured.**

■ Time Warner relies on its status as an additional insured on the Insurers' policies to distinguish the no-direct-action cases and defend its summary judgment. After scrutinizing the contractual obligations that Insurers owed to Time Warner as an additional insured, we agree with the Insurers that Time Warner failed to prove its entitlement to summary judgment.

We start with the language of the policies. The West American CGL policy includes an endorsement that names Time Warner Entertainment Co., LP and all divisions and affiliates thereof as additional insureds. The operative language of the endorsement provides: "WHO IS AN INSURED (Section II) is amended to include as an insured [Time Warner] but only with respect to liability arising out of your operations or premises owned by or rented to you." In the "insuring agreement" portion of the CGL coverage form, West American promised as follows:

We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

Thus, the policy is a standard liability policy in which West American assumed two distinct duties towards its insureds—the duty to defend and the duty to indemnify. *See Farmers Tex. County Mut. Ins. Co. v. Griffin,* 955 S.W.2d 81, 82 (Tex.1997) (per curiam). The Ohio Casualty umbrella policy sets forth Ohio Casualty's duty to indemnify in similar language:

We will pay on behalf of the "insured" those sums in excess of the "Retained Limit" that the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an "insured contract" because of "bodily injury," "property damage," or "advertising injury" that takes place during the Policy Period and is caused by an "occurrence" happening anywhere.

Time Warner does not rely on the duty to defend, so the question is whether Time Warner proved an entitlement to policy proceeds under the duty to indemnify. We conclude it has not. The CGL policy states that West American will pay sums "that the insured becomes legally obligated to pay as damages," with certain other qualifications. The umbrella policy contains a similar requirement that the insured be "legally obligated to pay" as a prerequisite to indemnification. We construe the policies to provide unambiguously that the duty to indemnify arises only after an insured's legal responsibility for covered damages has been established by judgment or settlement. Our conclusion finds ample support in our State's jurisprudence and other authorities. *E.g., Collier v. Allstate County Mut. Ins. Co.,* 64 S.W.3d 54, 62 (Tex.App.-Fort Worth 2001, no pet.) ("[T]he duty to indemnify only arises after an insured has been adjudicated, whether by judgment or settlement, to be legally responsible for damages in a lawsuit."); *accord Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co.,* 130 S.W.3d 181, 190 (Tex.App.-Houston [14th Dist.] 2003, pet. denied); *Reser v. State Farm Fire & Cas. Co.,* 981 S.W.2d 260, 263 (Tex.App.-San Antonio 1998, no pet.); *see also* 1 ALLAN D. WINDT, INSURANCE CLAIMS & DISPUTES: REPRESENTATION OF INSURANCE COMPANIES AND INSUREDS § 6:6 (5th ed. 2007) ("Third-party liability policies require, as a condition precedent to the insurer's liability, that the insured be liable to a third person, by means of either a judgment or a settlement.") (footnote omitted).

At oral argument, Time Warner argued that its position is supported by the recent decision in *Lamar Homes, Inc. v. Mid-Continent Casualty Co.,* 242 S.W.3d 1 (Tex.2007). We cannot agree. That case was a suit by Lamar Homes against its CGL carrier for a declaration as to whether the carrier owed a duty to defend Lamar Homes against defective-workmanship claims brought by third persons. *Id.* at 5–6. In this case, by contrast, the record does not reflect that Time Warner has been sued by any third persons, nor does Time Warner seek a declaration that the Insurers have a duty to defend it. In *Lamar Homes,* the court's coverage analysis was limited to whether the defective-workmanship claims involved an "occurrence," "property damage," or damages that were otherwise excluded from coverage. *Id.* at 7–16. The court had no occa-

sion to address, and did not address, the policy requirement on which Time Warner's summary judgment founders—the requirement that Time Warner be "legally obligated to pay" covered damages. Thus, *Lamar Homes* does not support Time Warner's position that the Insurers have breached any duties owed to it as an additional insured.

Although the Insurers' issue is couched in terms of standing, we note that the defect in Time Warner's additional-insured argument is not technically a defect of standing—as a named beneficiary of the insurance policies, Time Warner is entitled to seek a declaration of its rights as such. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.004(a) (Vernon Supp.2007) (authorizing a person interested under a written contract to seek declaratory relief). Time Warner has simply failed to prove facts showing that Insurers owe it any duties as an additional insured at this time.[1]

### 3. Conclusion

Time Warner did not prove with conclusive evidence that it holds a judgment against or has settled with Signal. Accordingly, it did not demonstrate that it has standing to sue Insurers pursuant to the duties they owe as Signal's liability insurers. Nor did Time Warner prove with conclusive evidence that it has been held "legally obligated to pay" covered damages, as is necessary to trigger its own coverage as an additional insured. Because Time Warner must prove at least one of these facts as an essential element of its claims against Insurers for policy proceeds, the trial court erred in granting summary judgment, both in declaring that Insurers owed Time Warner a duty to indemnify and in awarding money dam-

ages to Time Warner. We reverse the judgment in favor of Time Warner in its entirety. Because the Insurers did not move for summary judgment based on these arguments, however, we may not consider them as grounds for rendition in their favor. *Madisonville State Bank v. Canterbury, Stuber, Elder, Gooch & Surratt, P.C.*, 209 S.W.3d 254, 259 (Tex.App.-Dallas 2006, no pet.).

### B. Coverage

▪ In their second issue, Insurers urge us to render a take-nothing judgment in their favor based on their motion for summary judgment. In that motion, Insurers contend that Time Warner's underlying claims against Signal are not covered by the policies as a matter of law. They argue that Time Warner has alleged no "property damage" caused by an "occurrence," as those terms are defined in the policies, and alternatively that certain exclusions apply. Accordingly, Insurers contend that they are entitled to a take-nothing judgment, and that we should render judgment declaring that there is no coverage of Time Warner's claims against Signal. We conclude that we cannot reach Insurers' second issue.

We have already concluded that Time Warner failed to demonstrate that it has standing to assert a claim that the Insurers owe Signal coverage for the underlying claims and that Insurers must pay Time Warner now on the insurance policies. Insurers' second issue is simply the mirror-image of this aspect of Time Warner's claim—it is a request that we render judgment that Signal is *not* insured against the underlying claims by Time Warner. The same problems of standing and nonjustici-

---

1. Given the Insurers' thorough and consistent briefing of this point throughout this case, both below and on appeal, we consider the point to have been "fairly included" in their first appellate issue and properly before us. TEX.R.APP. P. 38.1(e); *see also Forrest v. Vital Earth Res.*, 120 S.W.3d 480, 485–86 (Tex. App.-Texarkana 2003, pet. denied).

ability that preclude Time Warner from obtaining judgment against the Insurers also preclude us from rendering judgment in favor of the Insurers against Time Warner. This result follows from the logic of *Owens v. Allstate Insurance Co.,* 996 S.W.2d 207 (Tex.App.-Dallas 1998, pet. denied). In that case, Allstate was the insurer on an auto liability policy with a $40,000 per occurrence limit. *Id.* at 207–08. One month after its insured injured several people in an accident, Allstate filed an interpleader action naming the six potential claimants as defendants. *Id.* at 207–08. One claimant challenged the court's subject-matter jurisdiction on the ground that "Allstate had no standing to sue her, no controversy existed between Allstate and her, and the case between Allstate and her, if any, was not yet justiciable." *Id.* at 208. Nevertheless, the trial court divided the available policy proceeds among the other claimants. *Id.* Citing the no-direct-action rule, we vacated the judgment and dismissed the case for lack of subject-matter jurisdiction. *Id.* at 208–09. Here, although Insurers are essentially seeking a declaration of noncoverage against a third-party claimant instead of interpleading policy proceeds, the logic of *Owens* applies because Signal's liability has not yet been adjudicated. We have no jurisdiction to render the judgment requested by Insurers, nor did the trial court.

## IV. Conclusion

The pleadings and proof before the trial court show that Time Warner lacks standing to seek a declaration of the Insurers' coverage obligations to Signal or to recover policy proceeds based on such a declaration. Accordingly, the trial court did not have jurisdiction to render summary judgment for Time Warner on that issue, nor did it have jurisdiction to consider the Insurers' opposing motion for summary judgment on that issue. The trial court did have jurisdiction to consider Time Warner's claim for declaratory judgment as to its rights as an additional insured, but that status cannot support Time Warner's summary judgment.

We reverse the judgment of the trial court in its entirety, and we remand the case for further proceedings consistent with this opinion.