**LANDMARK AMERICAN INSUR-ANCE CO. and Seneca Special-ty Insurance Co., Appellants**

v.

**EAGLE SUPPLY & MANUFACTUR-ING L.P. f/k/a Eagle Construction & Environmental Services, L.P., and Me-tex Demolition, LLC, Appellees**

No. 11-14-00262-CV

Court of Appeals of Texas, Eastland.

Opinion filed August 25, 2017

Michael A. Yanof, Dallas, Linda Szuhy, J. Richard Harmon, Cassie J. Dallas, Cathlynn H. Cannon, Dallas, for Appellants.

Randal L. Dean, Misty Michelle Pratt, Fort Worth, for Appellees.

Panel consists of: Wright, C.J., Willson, J., and Bailey, J.

## OPINION

JOHN M. BAILEY, JUSTICE

This is a permissive appeal brought from the denial of two motions for summary judgment filed by liability insurers. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(d) (West Supp. 2016); TEX. R. APP. P. 28.3. The insurers contend that, as a matter of law, the trial court does not have subject-matter jurisdiction to adjudicate claims brought directly against them by an injured party to access liability insurance coverage. We reverse and render in part and remand in part.

### Background Facts

Eagle Supply & Manufacturing L.P. f/k/a Eagle Construction & Environmental Services, L.P. owns three power plants in Texas. In the summer of 2011, Eagle contracted with Metex Demolition, LLC for the sale of personal property from the power plants. The contracts also required Metex to perform various demolition, cleanup, and remediation services at the power plants. The contracts required Metex to obtain liability insurance for the demolition work. Landmark American Insurance Co. issued a pollution liability policy to Metex; and Seneca Specialty Insurance Co. issued a general commercial liability insurance policy to Metex.

This appeal arises from Eagle's contention that Metex damaged its property while performing services under the contracts and that Landmark and Seneca are contractually liable for these property damages under the liability insurance policies. Eagle also asserted that Metex breached payment obligations under the contracts. Eagle's claims for breach of contract against Metex are not covered by Landmark's and Seneca's insurance policies.

Metex filed a Chapter 11 bankruptcy proceeding on March 30, 2012. Ten days later, Eagle filed the underlying suit in state court. Eagle originally filed the suit against an affiliate and principals[1] of Metex, asserting claims against them for breach of contract and fraud.

---

1. These parties are Indus Logistics, LLC, Suleman Sohani, Prateek Desai, and Chirag Gandhi. They are not parties to this appeal. Eagle collectively referred to this entity and these individuals as "the Metex Defendants" in its pleadings. Eagle subsequently referred to them as "the Eastland County Affiliated Parties" in a settlement agreement. For the purpose of clarity, we will also refer to the other parties as "the Eastland County Affiliated Parties."

Eagle subsequently asserted claims for property damage and breach of contract against Metex in the bankruptcy court by filing a proof of claim in Metex's bankruptcy proceeding on July 26, 2012. Eagle asserted a liquidated claim under various contracts totaling $2,309,830.01. Eagle also asserted an unliquidated claim for property damages in its proof of claim. Eagle did not list an amount that it claimed in unliquidated damages for property damages in its proof of claim.

While the bankruptcy proceeding was pending, Eagle added Landmark and Seneca as parties to the underlying action on November 9, 2012. Eagle initially asserted that Landmark and Seneca owed contractual obligations to Eagle under the policies to remedy the property damages caused by Metex. Accordingly, Eagle asserted that it had a "direct cause of action" against Landmark and Seneca for breach of contract. Landmark and Seneca each filed a plea to the jurisdiction in their initial pleadings asserting that the trial court lacked subject-matter jurisdiction because Eagle did not have standing to bring a direct cause of action against them.

On March 31, 2013, a settlement agreement was filed in the bankruptcy proceeding. A recital at the beginning of the settlement agreement listed the parties to it as being Eagle and the "Eastland County Affiliated Parties." However, the settlement agreement contained language binding Metex to the terms of the agreement. For example, one provision of the settlement agreement provided that "Metex and the Eastland County Affiliated Parties agree that Metex may be named as a defendant in the Eastland County Litigation." Additionally, Metex was a signatory to the agreement because someone signed the agreement on behalf of Metex.

The settlement agreement referenced the underlying proceeding as "the East-land County Litigation." In the agreement, the parties agreed "to enter into a full and complete compromise and settlement of the claims asserted in the Eastland County Litigation (except as specifically excluded from this Agreement)." The parties additionally agreed "that Eagle will proceed in the Eastland County Litigation and may name Metex as a defendant with the Eastland County Affiliated Parties in order to access insurance coverage and policy proceeds." The settlement agreement further provided that Metex damaged Eagle's property and that "Metex and the Eastland County Affiliated Parties will, upon confirmation of the Plan [of reorganization], take such actions as are necessary to assert, diligently pursue, and effectuate a claim (or claims), to and against each of the insurance carriers that provide insurance coverage for the damages."

On March 31, 2013, Metex also filed a "Fourth Joint Plan of Reorganization" in the bankruptcy proceeding. This plan of reorganization referred to the settlement agreement as the "Eagle Claim CSA." The plan of reorganization recited that "without the Eagle Claim CSA, it is unlikely that the Plan could be confirmed." The plan of reorganization provided for an "Abatement Event" that "occurs when a settlement or judgment in the Eastland County Litigation with regard to all insured claims becomes final." The plan of reorganization provided that Eagle would receive an unsecured claim against Metex in the amount of $2,603,284.80 and that this amount would be reduced by up to $975,000 when the Abatement Event occurs.

The bankruptcy court entered an order confirming this plan of reorganization on April 5, 2013. The bankruptcy court also entered an order granting Eagle's unsecured claim in the amount of $2,603,284.80. Lastly, the bankruptcy court entered a

"Consent Order of Dismissal with Prejudice" with respect to Eagle's claim that provided as follows: "This cause came on to be heard by and through the consent of the parties from all of which it appears to the Court that the matters and issues herein have been resolved and that this case may be, and the same is hereby, dismissed with prejudice."

Eagle subsequently added Metex as a party to the underlying action on April 23, 2013. Metex pleaded a general denial of Eagle's claim against it. Metex also asserted causes of action against Landmark and Seneca. Metex alleged in its pleadings that "Eagle incurred significant damages to its power plant properties" that "consisted of both environmental damages and physical property damages." Metex alleged that it put Landmark and Seneca on notice of Eagle's claims and that they "individually and collectively, failed to indemnify Metex, failed to provide coverage, and failed to provide a defense in the forum in which the claims were asserted against Metex." Metex asserted that Eagle's claims were vigorously contested in several bankruptcy proceedings and that the bankruptcy court ruled in favor of Eagle against Metex. Metex also alleged that it entered into the settlement agreement based upon the rulings of the bankruptcy court.

Eagle subsequently filed a motion for summary judgment against Metex in the underlying action. At the hearing on the motion, Eagle's counsel advised the trial court that Metex did not oppose the motion and that Metex did not file a response to the motion. In that regard, Metex responded to Eagle's requests for admissions by admitting to every request for admission made by Eagle, including requests pertaining to liability and damages for the property damage that is the subject of Eagle's claims against Landmark and Seneca. The trial court ultimately granted Eagle's motion for summary judgment against Metex.

After the trial court granted Eagle's motion for summary judgment against Metex, the parties filed a joint motion to consolidate claims and to realign the parties. The motion sought to consolidate Metex's claims against the insurers with Eagle's claims against the insurers. Eagle subsequently filed an amended petition alleging that its damage claims against Metex were litigated in the bankruptcy proceedings and that Landmark and Seneca "failed and refused to participate in the bankruptcy proceedings, failed to provide a defense to Metex, and wholly failed to provide the insurance coverage" that they agreed to provide. Eagle further alleged that it "diligently and properly pursued its underlying claims against Metex, and Metex vigorously defended the claims" in the bankruptcy court. Eagle asserted that it had obtained a "Final Non-appealable Order" against Metex, that Landmark was liable to Eagle in the amount of $523,360, and that Seneca was liable to Eagle in the amount of $577,703 under the terms of the bankruptcy court's orders. Eagle asserted claims against Landmark and Seneca for unfair settlement practices, breach of the duty of good faith and fair dealing, failure to comply with the prompt payment statute, violations of the DTPA, and breach of contract.

Landmark and Seneca subsequently filed motions for summary judgment. Landmark actually filed two motions for summary judgment. One motion sought summary judgment on Eagle's claims against Landmark, and the other motion sought summary judgment on Metex's claims against Landmark. Seneca only filed one motion for summary judgment. However, it only sought summary judgment on Eagle's claims against Seneca. With respect to Landmark, the record

does not indicate that the trial court acted on Landmark's motion for summary judgment brought on Metex's claims against Landmark. Thus, the summary judgment orders giving rise to this permissive appeal only concerned Landmark's and Seneca's motions for summary judgment pertaining to Eagle's claims. However, Metex is an appellee in this appeal because its claims against Landmark and Seneca remained pending at the time the summary judgment orders were entered as a result of the joint motion to consolidate claims and realign the parties. Additionally, Metex's attorneys (who are the same attorneys representing Eagle) have listed Metex as a party joining Eagle in its filings in this appeal.

Landmark asserted in its motion for summary judgment pertaining to Eagle that Eagle lacked standing as a matter of law to assert its claims against Landmark. Landmark additionally alleged that Eagle's claims are barred because Metex breached conditions in the Landmark insurance policy. Seneca asserted that it was entitled to summary judgment because Metex breached conditions precedent in the Seneca policy that prejudiced Seneca as a matter of law. Seneca also asserted that Eagle did not have a cause of action against it either directly or as assignee of Metex.

The trial court denied Landmark's and Seneca's motions for summary judgment. Landmark and Seneca obtained permission from the trial court to pursue a permissive appeal of the denial of their motions for summary judgment. We subsequently granted Landmark's and Seneca's petitions seeking a permissive appeal. We granted Landmark's appeal on the following issues:

1. Whether Eagle lacks standing to pursue its claims against Landmark;

2. Whether Eagle can sue Landmark as a third-party claimant to the Policy; and

3. Whether Metex materially breached the Policy so as to preclude coverage for Eagle.

We granted Seneca's appeal on the following issues:

1. Whether as judgment creditor Eagle is precluded from coverage under the Seneca policy because Metex materially breached policy conditions and prejudiced Seneca as a matter of law;

2. Whether Metex's assignment of its claim against Seneca is void on public policy grounds; and

3. Whether Eagle has standing to assert a common law and statutory bad faith claim against Seneca.

*Analysis*

Section 51.014(d) allows a permissive appeal when the trial court makes a substantive ruling on a controlling question of law. This appeal presents a question of law because it concerns Eagle's standing to pursue claims against Landmark and Seneca. "A party's standing to sue is implicit in the concept of subject-matter jurisdiction and is not presumed; rather, it must be proved." *Linegar v. DLA Piper LLP (US)*, 495 S.W.3d 276, 279 (Tex. 2016) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445–46 (Tex. 1993)). "Standing is a question of law for the court to determine, although facts necessary to the determination may need to be determined by the factfinder." *Id.* Standing is a matter that concerns the jurisdiction of a court to afford the relief requested, rather than the right of a plaintiff to maintain a suit for the relief requested. *Sneed v. Webre*, 465 S.W.3d 169, 186 (Tex. 2015) (citing *Dubai Petroleum*

*Co. v. Kazi*, 12 S.W.3d 71, 76–77 (Tex. 2000)).

### Landmark's Appeal

Landmark asserts in its first issue that Eagle lacks standing as an insured party under the Landmark policy to assert a direct action against Landmark for breach of contract or extra-contractual claims. We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). A party moving for traditional summary judgment bears the burden of proving that there is no genuine issue of material fact as to at least one essential element of the cause of action being asserted and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017). When reviewing a traditional motion for summary judgment, we review the evidence in the light most favorable to the nonmovant, indulge every reasonable inference in favor of the nonmovant, and resolve any doubts against the motion. *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005). A defendant who conclusively negates a single essential element of a cause of action or conclusively establishes an affirmative defense is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010).

"In Texas, the general rule ... is that an injured party cannot sue the tortfeasor's insurer directly until the tortfeasor's liability has been finally determined by agreement or judgment." *In re Essex Ins. Co.*, 450 S.W.3d 524, 525 (Tex. 2014) (orig. proceeding) (per curiam) (alteration in original) (quoting *Angus Chem. Co. v. IMC Fertilizer, Inc.*, 939 S.W.2d 138, 138 (Tex. 1997)); *see also Aviles v. Aguirre*, 292 S.W.3d 648, 649 (Tex. 2009) (per curiam). This general rule has been described as the "no direct action" rule. *In re Essex*, 450 S.W.3d at 525; *see Farmers Ins. Exch. v. Rodriguez*, 366 S.W.3d 216, 223 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). The roots of the no-direct-action rule lie in the no-action clause commonly found in liability insurance policies. *Ohio Cas. Ins. Co. v. Time Warner Entm't Co., L.P.*, 244 S.W.3d 885, 888 (Tex. App.—Dallas 2008, pet. denied). There are also public policy reasons that support the rule. *Id.*

This appeal involves an application of the no-direct-action rule. Some courts have construed the rule as one of standing while other courts have treated the rule as an issue of ripeness. *Auzenne v. Great Lakes Reinsurance, PLC*, 497 S.W.3d 35, 37–38 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *Ohio Cas. Ins. Co.*, 244 S.W.3d at 888. Standing focuses on who may bring an action, while ripeness examines when that action may be brought. *See Auzenne*, 497 S.W.3d at 38 (citing *Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998)). Like standing, ripeness implicates subject-matter jurisdiction. *Id.* This appeal concerns both standing and ripeness: (1) Does Eagle have standing as an insured to sue directly under the Landmark policy? (2) If not, does Eagle have a ripe claim against Landmark as a result of a sufficient judgment against Metex? We answer both of these questions in the negative.

### Is Eagle an "Insured" under the Landmark Policy?

Landmark asserts in its first issue that Eagle lacks standing as an insured party under the Landmark policy to assert a direct action against Landmark for either breach of contract or extra-contractual claims. This contention requires an analysis of the Landmark policy. An insurance

policy generally is governed by the same rules of construction that apply to other contracts. *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015).

The "Policy Declarations" page of the Landmark policy named "Metex Demo LLC" as the only named insured. The Landmark policy provided "Contractors Pollution Liability Coverage" to the following "Covered Persons and Entities":

1. Named Insured as shown in the Declarations, and if the Named Insured is an individual, his or her spouse, but only as respects operations performed by or on behalf of the Named Insured;

2. Any present or former principal, partner, officer, director or employee of the Named Insured, but only as respects operations performed by or on behalf of the Named Insured;

3. Heirs, Executors, Administrators, and in the event of an Insured's death, incapacity or bankruptcy, legal representatives of any Insured, but only as respects operations performed prior to such Insured's death, incapacity or bankruptcy.

The Landmark policy provided that Landmark would "pay on behalf of the Insured, as shown in the Declarations, all sums that the Insured becomes legally obligated to pay as **Damages**."

As a liability insurance policy, the Landmark policy is a "third-party" policy that is designed to insure against a loss to third parties caused by the insured or another covered person for whom the covered person may be legally responsible. *See* Mark L. Kincaid & Christopher W. Martin, *Texas Practice Guide: Insurance Litigation* § 7.1 (2015-2016 ed.) (explaining the differ-

ence between first-party and third-party insurance policies). To the extent that Eagle is a third-party claimant under the Landmark policy, the no-direct-action rule precludes Eagle from pursuing a direct action against Landmark unless and until Metex's liability to Eagle has been established by final judgment or agreement. *See Farmers Ins. Exch.*, 366 S.W.3d at 223. Eagle is essentially asserting that it is a first-party claimant under the Landmark policy and that, as such, it can assert a claim directly against Landmark. *See Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 53 n.2 (Tex. 1997) ("A first-party claim is one in which an insured seeks recovery for the insured's own loss." (citing Dennis J. Wall, *Litigation and Prevention of Insurer Bad Faith* 324 (1995))).

In determining a question of insurance coverage, we look first to "the language of the policy because we presume parties intend what the words of their contract say." *JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597, 602 (Tex. 2015) (quoting *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010)). As noted previously, Metex is the only named insured in the Landmark policy. Furthermore, the Landmark policy is a third-party liability policy that only provides coverage for damages caused by Metex to third-parties.[2] It does not contain any provisions providing first-party coverage for an insured party's own loss.

▬ Eagle bases its status as a first-party claimant on its contracts with Metex and a "Certificate of Liability Insurance" naming Eagle as a "certificate holder." With respect to the contracts with Metex, we do not consider the terms of other contracts unless obligated to do so by the

---

**2.** We will subsequently address Eagle's standing to assert a claim as a third-party claimant under the Landmark policy.

terms of the policy. *Liberty Surplus Ins. Corp. v. Exxon Mobil Corp.*, 483 S.W.3d 96, 100 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (citing *In re Deepwater Horizon*, 470 S.W.3d 452, 460 (Tex. 2015)). If the policy does not incorporate any coverage provisions from other contracts, then "the insurer's obligation depended on what it contracted to do, not what the insured contracted with another person to do." *Id.* at 100–01 (quoting *In re Deepwater Horizon*, 470 S.W.3d at 461). Eagle has not cited any provision of the Landmark policy, and we have found none, that requires us to consider Eagle's contracts with Metex to determine if Eagle is a first-party claimant under the Landmark policy.

■ With respect to the Certificate of Liability Insurance, we also conclude that it does not confer first-party claimant status to Eagle. We first note that the certificate was not issued by Landmark but, rather, by BEMA Insurance, as the "producer." The certificate identified Metex as the insured and identified Eagle as the "certificate holder." In addition to naming Landmark as an insurer, the certificate also identified Seneca and three other insurance companies as insurers for Metex. The certificate provided as follows:

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

By express terms, the certificate did not confer any rights to Eagle as the certificate holder, and it did not alter or amend the coverage provided by the applicable insurance policies. "It is well-established under Texas law that when a certificate of insurance contains language stating that the certificate does not amend, extend, or alter the terms of any insurance policy mentioned in the certificate, the terms of the certificate are subordinate to the terms of the insurance policy." *TIG Ins. Co. v. Sedgwick James*, 184 F.Supp.2d 591, 597 (S.D. Tex. 2001). Accordingly, we agree with Landmark that Eagle is not an insured under the Landmark policy and that it cannot sue Landmark for breach of contract under the policy as a first-party claimant. *See In re Essex*, 450 S.W.3d at 525; *Angus Chem. Co.*, 939 S.W.2d at 138.

### Eagle's Extra-Contractual Claims

■ Eagle also asserted claims against Landmark for unfair claim settlement practices under the Texas Insurance Code, breach of the duty of good faith and fair dealing, failure to comply with the "prompt payment statute," and violations of the DTPA. *See* Tex. Ins. Code Ann. §§ 541.051, .060, .061 (West 2009), § 542.058 (West Supp. 2016); Tex. Bus. & Comm. Code Ann. § 17.46 (West Supp. 2016). Eagle's status as third-party claimant also precludes it from asserting these extra-contractual claims. Section 541.060(b) provides that a third-party claimant asserting a claim against an insured covered under a liability insurance policy does not have a cause of action for unfair claim settlement practices. *See Allstate Ins. Co. v. Watson*, 876 S.W.2d 145, 149 (Tex. 1994); *Reule v. Colony Ins. Co.*, 407 S.W.3d 402, 410 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). Furthermore, a third-party claimant lacks standing to sue an insurer for breach of the duty of good faith and fair dealing. *Tex.*

*Farmers Ins. Co. v. Soriano*, 881 S.W.2d 312, 317 (Tex. 1994); *see Reule*, 407 S.W.3d at 410. Also, a third-party claimant may not bring a claim under the prompt payment statute. *Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660, 674–75 (Tex. 2008). Finally, a third-party claimant may not bring an action under the DTPA against a liability insurer. *Watson*, 876 S.W.2d at 149; *see also Transp. Ins. Co. v. Faircloth*, 898 S.W.2d 269, 273–74 (Tex. 1995).

We sustain Landmark's first issue asserting that Eagle does not have standing to bring a first-party claim against Landmark for either breach of contract or extra-contractual claims.

*Can Eagle Bring a Breach of Contract Claim as a Third-Party Claimant Under the Landmark Policy?*

▆▆ Landmark asserts in its second issue that Eagle cannot assert a third-party claim against Landmark as a judgment creditor. Thus, we continue our analysis to determine if Eagle has a ripe claim against Landmark as a result of a sufficient judgment against Metex. *See Angus Chem. Co.*, 939 S.W.2d at 138. This is essentially the second part of the no-direct-action rule. As noted in *Ohio Casualty*, the rule is based on the no-action clause commonly found in liability insurance policies. 244 S.W.3d at 888. The Landmark policy provides:

> No action will be taken against [Landmark] unless, as a condition precedent, the Insured is in full compliance with all of the terms of this policy and until the amount of the insured's obligations to pay shall be have been finally determined, either by judgment against the insured after actual trial, or by written agreement of the insured, the claimant and the Company.

Eagle contends that it has two final judgments "fixing liability and damages" against Metex: the judgment from the bankruptcy proceeding and the summary judgment entered against Metex in the underlying proceedings. Landmark contends that neither of these judgments is sufficient because neither is the result of a "fully adversarial trial" under the holding of *State Farm Fire & Casualty Co. v. Gandy*, 925 S.W.2d 696, 714 (Tex. 1996). The resolution of this issue answers two questions: (1) Are the previous judgments binding on Landmark? (2) If the previous judgments are not the result of an actual trial, does Eagle have a ripe claim against Landmark that permits the underlying suit to be brought?

The Texas Supreme Court held in *Gandy*: "In no event, however, is a judgment for plaintiff against defendant, rendered without a fully adversarial trial, binding on defendant's insurer or admissible as evidence of damages in an action against defendant's insurer...." 925 S.W.2d at 714. Landmark and Eagle disagree on whether this holding from *Gandy* is applicable to Eagle's claims and, if so, whether the two previous judgments were the product of a fully adversarial trial under the holding in *Gandy*. We are greatly aided in our resolution of these questions by the Texas Supreme Court's recent opinion in *Great American Insurance Co. v. Hamel*, No. 14-1007, 525 S.W.3d 655, 2017 WL 2623067 (Tex. June 16, 2017).

▆▆ In *Hamel*, the court addressed questions that have arisen since *Gandy*. The court noted that *Gandy* has two applications. *Id.* at 662–65, at *5–6. In some instances, the court's holding in *Gandy* will invalidate on public policy grounds an assignment to the injured party of an insured's claims against its insurance carri-

er.[3] *Id.* However, the court in *Hamel* held that *Gandy* has a broader application—it defines when a judgment against the insured is binding on the insurance company—when it is the result of a "fully adversarial trial." *Id.* at 661–67, at *6–8 (quoting *Gandy*, 925 S.W.2d at 714).

In *Hamel*, the court interpreted the phrase "fully adversarial" as used in *Gandy*. *Id.* at 661–67, at *6–8. The court noted that, under prior authority, a determination of "fully adversarial" required courts to "retroactively evaluate and thus second-guess trial strategies and tactics, which . . . often produces an inaccurate and unreliable result." *Id.* at 666, at *7. The court concluded that "[t]his misplaced focus on trial details likely results from a misinterpretation of the phrase 'fully adversarial.' " *Id.* The court held:

> Today we clarify that the controlling factor is whether, at the time of the underlying trial or settlement, the insured bore an actual risk of liability for the damages awarded or agreed upon, or had some other meaningful incentive to ensure that the judgment or settlement accurately reflects the plaintiff's damages and thus the defendant—insured's covered liability loss.
>
> . . . .
>
> . . . We believe adversity turns on the insured defendant's incentive to defend (or lack thereof), and an after-the-fact

evaluation of the parties' trial strategies therefore has no place in the analysis. *Id.* at 665–67, at *7–8.

In *Hamel*, the insured entered an agreement with the claimant prior to trial that "eliminated any meaningful incentive" for the insured to contest a judgment against the claimant. *Id.* at 666, at *8. The court held that, "[w]hen the parties reach an agreement before trial or settlement that deprives one of the parties of its incentive to oppose the other, the proceeding is no longer adversarial." *Id.* "Stated another way, proceedings lose their adversarial nature when, by agreement, one party has no stake in the outcome and thus no meaningful incentive to defend itself." *Id.*

Under *Hamel*'s interpretation of *Gandy*, the circumstances in this case establish that neither of the two previous judgments was the result of a fully adversarial trial. Our analysis begins and ends with the settlement agreement entered in the bankruptcy proceeding. We disagree with Eagle's contention that Metex was not a party to the settlement agreement. The settlement agreement was executed in connection with Metex's bankruptcy proceeding, contained terms binding Metex to the settlement agreement, and was executed by someone on behalf of Metex. Furthermore, the plan of reorganization approved by the bankruptcy court recited that, "without the [settlement agreement], it is unlikely that the Plan could be confirmed."

---

**3.** The facts in *Hamel* differ from the circumstances in this appeal. The insurer in *Hamel* acknowledged that it had breached its duty to defend. 525 S.W.3d at 662 n.4, 2017 WL 2623067, at *4 n.4. When an insurer "wrongfully refuses to defend its insured is barred from collaterally attacking a judgment or settlement between the insured and the plaintiff." *Id.* at 662, at *5 (citing *ATOFINA*, 256 S.W.3d at 671; *Emp'rs Cas. Co. v. Block*, 744 S.W.2d 940, 943 (Tex. 1988)). In this case, Landmark and Seneca contend that they did

not breach a duty to defend Metex because Metex did not request a defense. *See Nat'l Union Fire Ins. Co. v. Crocker*, 246 S.W.3d 603, 608 (Tex. 2008) ("Mere awareness of a claim or suit does not impose a duty on the insurer to defend under the policy; there is no unilateral duty to act unless and until the additional insured first *requests* a defense—a threshold duty that the insured fulfills under the policy by notifying the insurer that the insured has been served with process and the insurer is expected to answer on its behalf.").

·As was the case in *Hamel*, the settlement agreement in this case removed any meaningful incentive for Metex to oppose Eagle's property damage claim at the time each subsequent judgment was rendered. To the contrary, the settlement agreement contained language requiring Metex and its principals "to take such· actions as are necessary to assert, diligently pursue, and effectuate a claim (or claims), to and against each of the insurance carriers that provide insurance coverage for the damages."· And as was the case in *Hamel*, the settlement agreement rendered the judgment of the bankruptcy court and the underlying summary ·judgment that Eagle obtained against Metex as being mere formalities. *See id..* at 666–67, at *8. After the settlement agreement was executed, Eagle's property damage claims against Metex no longer involved opposing parties, .and the proceedings that followed were not fully adversarial. *See .id.* at 667–68, at *9.

As a matter of law, neither the bankruptcy court judgment nor the summary judgment against Metex was the result of a fully adversarial trial under *Hamel* and *Gandy*. Thus, neither of the judgments is binding on Landmark, and ·the judgments are not admissible as evidence of damages in a subsequent action against Landmark. *See id.* at 663–65, at *6. Furthermore, without a sufficient judgment against Metex, Eagle does not have a ripe claim under the no-direct-action rule to pursue a breach of contract claim as a judgment creditor against Landmark. *See Angus Chem. Co.*, 939 S.W.2d at 138.

◼ Eagle has asserted that it is also entitled to bring an action against Landmark as a third-party beneficiary of the policy. As recognized by the Texas Supreme Court in *State Farm County Mutual Insurance Co. of Texas v. Ollis*, even though an injured party is a third-party beneficiary of a liability insurance policy, the no-direct-action rule still applies to his claim. 768 S.W.2d 722, 723 (Tex. 1989). Eagle also asserts that it has "recently received an assignment from Metex for all causes of action against Landmark." However, this assignment was not before the trial court, and it is not· a part of the record on appeal. Accordingly, it does not constitute a basis for the resolution of this appeal.

We sustain Landmark's second issue asserting that Eagle cannot sue Landmark as a third-party claimant.

*Landmark's Contention that Metex Materially Breached Policy Conditions*

Landmark asserts in its third issue that Eagle's claims are precluded as a matter of law because Metex materially breached conditions in the Landmark policy. Landmark conditionally presents this issue based upon the possibility that we found that Eagle has standing to assert a claim against Landmark. In light of our disposition of Landmark's first and second issues, we ·do not reach Landmark's third issue.

*Seneca's Appeal*

*Is Eagle a first-party claimant under the Seneca policy for damages caused by Metex?*

◼ Seneca asserts in its third issue that Eagle lacks standing to assert a first-party claim under the Seneca policy or to assert extra-contractual claims. Seneca issued a commercial general liability coverage policy to ·Metex. Metex was the only named insured listed on the declarations page of the Seneca policy. However, the Seneca policy had an "Additional Insured" endorsement naming Eagle as an Additional Insured. The endorsement provided that Eagle would be included in the section of the policy describing "Who Is An Insured" "with respect to liability for 'bodily

injury', 'property damage' or 'personal and advertising injury.' "

Eagle contends that its status as an additional insured under the Seneca policy conferred first-party claimant status upon Eagle. We disagree. The Dallas Court of Appeals addressed an analogous situation in *Ohio Casualty*, 244 S.W.3d at 889–91. As was the case in *Ohio Casualty*, the Seneca policy is a standard liability policy in which Seneca assumed the duty to defend and the duty to indemnify the named insureds, Metex and Eagle. *See id.* at 889–90 (citing *Farmers Tex. Cty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997) (per curiam)). The Seneca policy provided that Seneca "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Thus, the policy provides that Seneca will defend and indemnify Eagle for claims brought against Eagle the same as Seneca is obligated to do with respect to claims brought against Metex. However, Eagle's status as an additional insured does not change its status as a third-party claimant under the Seneca policy with respect to its claims against Metex for property damage. *See id.* at 889 (citing *Rumley v. Allstate Indem. Co.*, 924 S.W.2d 448, 449–50 (Tex. App.—Beaumont 1996, no writ)).

Eagle's status as a third-party claimant under the Seneca policy for Eagle's claims against Metex for property damage leads to the same analysis and result as with Eagle's claims under the Landmark policy. Eagle does not have standing to bring a direct action for breach of contract under the Seneca policy. Additionally, as a third-party claimant, Eagle does not have standing to assert extra-contractual claims against Seneca. Eagle also does not have a valid claim as a judgment creditor because the judgments upon which it relies did not occur as the result of a fully adversarial trial under the authority of *Hamel* and *Gandy*. *See Hamel*, 525 S.W.3d at 663–67, 2017 WL 2623067, at *6–8. Accordingly, we sustain Seneca's third issue pertaining to Eagle's standing to assert a direct cause of action against Seneca.

*Seneca's First and Second Issues*

Seneca asserts in its second issue that Metex's assignment of its claims to Eagle pursuant to the settlement agreement entered in the bankruptcy proceeding is void on public policy grounds. This is essentially a claim under *Gandy* of an invalid assignment of claims.[4] Seneca asserts in its first issue that Metex materially breached the Seneca policy so as to preclude coverage for Eagle under the policy. Unlike the situation with Landmark, Seneca did not assert these issues conditioned on a finding that Eagle has standing to bring a cause of action against Seneca. We do not reach Seneca's first and second issues in light of our determination that Eagle cannot bring an action against Seneca under the no-direct-action rule.

*Conclusion*

We conclude that the trial court erred in denying Landmark's and Seneca's motions for summary judgment pertaining to Eagle's claims against Landmark and Seneca. Eagle is not a first-party claimant entitled to bring a direct cause of action under either the Landmark policy or the Seneca policy. Furthermore, the judgments upon which Eagle relies do not constitute sufficient judgments permitting it to bring a

---

4. We note that Eagle does not rely on the settlement agreement entered in the bankruptcy proceeding as an assignment of Metex's claims. Instead, Eagle asserts that Metex assigned its claims against Seneca and Landmark after the bankruptcy judgment and the summary judgment in the underlying proceedings.

direct action as a judgment creditor against Landmark and Seneca. Accordingly, we render judgment in favor of Landmark and Seneca on Eagle's claims for relief against them. However, a remand is necessary because Metex's claims against Landmark and Seneca remain pending in the trial court.

### This Court's Ruling

We reverse the orders of the trial court and render judgment in favor of Landmark and Seneca on Eagle's claims against them. The remainder of the cause is remanded for further proceedings consistent with this opinion.